UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>JOSE D CRUZ<br><br>Debtor. | Chapter 13<br>Case No. 10-43793 -MSH |
| JOSE D CRUZ,<br><br>Plaintiff<br><br>v<br><br>HACIENDA ASSOCIATES, LLC and<br>WELLS FARGO BANK, N.A.,<br><br>Defendants. | Adv. Pro. No. 11-04006<br><br>11-04006 |

**MEMORANDUM OF DECISION ON PLAINTIFF'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Before me is the emergency motion of the plaintiff, Jose D. Cruz, for a preliminary injunction barring defendant Wells Fargo Bank, N.A. from foreclosing its mortgage on the plaintiff's residence at 73 Bolton Street, Marlborough, Massachusetts. After a preliminary hearing on the motion on January 18, 2011, I entered a temporary restraining order enjoining the foreclosure sale, which had been scheduled for that day, but permitted Wells Fargo to postpone the sale by public proclamation to a date after January 25, 2011. On January 25th, I held an evidentiary hearing on the motion. After reviewing the complaint and the evidence submitted by the parties, and for the reasons stated below, I will grant the plaintiff's motion and enter a preliminary injunction subject to certain conditions.

1

In accordance with Fed. R. Civ. P. 65, made applicable to this proceeding by Fed. R. Bankr. P. 7065, my decision whether or not to grant a preliminary injunction must be based on the evidence before me, including the verified complaint and affidavits submitted by the parties. I consider the plaintiff's complaint to be a verified complaint because the plaintiff filed an affidavit dated January 13, 2011 in which he verified the facts alleged in the complaint. The plaintiff also filed the affidavit of Joseph Molina of GIM Services, Inc., who averred that his office submitted a loan modification application to Wells Fargo on behalf of the plaintiff on November 29, 2011. According to Mr. Molina's affidavit, after several inquiries regarding the status of the loan modification application, his office was informed by telephone on January 19, 2011 (after the complaint had been filed) that the plaintiff's loan modification application had been denied, and that the reason given for the denial was the approaching foreclosure sale. Mr. Molina also averred that Wells Fargo has not yet communicated this denial to the plaintiff in writing. Lastly, the plaintiff submitted the affidavit of his attorney, Michael Shepsis, who averred that he had contacted Wells Fargo's foreclosure counsel on several occasions regarding the status of the loan modification and as of January 18, 2011, he had not received any notice that the application had been denied.

In order to obtain a preliminary injunction, the requesting party must demonstrate that (i) there is a likelihood of success on the merits of his claim; (ii) that he will suffer irreparable harm if the injunction is not granted; (iii) that the harm to the requesting party if the injunction is not granted is greater than the harm to the opposing party if it is granted; and (iv) that the public interest would not be adversely affected by the issuance of the injunction. *See Sunshine Development, Inc. v. F.D.I.C.*, 33 F.3d 106, 110-11 (1st Cir. 1994).

2

On the issue of irreparable harm, the plaintiff seeks in Counts I (breach of contract) and V of his complaint (breach of duty of good faith and reasonable diligence) judgment canceling the pending foreclosure sale of his home. Accordingly, I find that absent an injunction the plaintiff will be irreparably harmed because a foreclosure sale will effectively deprive him of the relief requested in those counts of his complaint.

The question of whether the plaintiff is likely to succeed on the merits of his complaint is really the critical factor to be determined here. *See Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991). The plaintiff argues that Wells Fargo, which is a participant in the federal government's Home Affordable Modification Program ("HAMP"), breached its obligation under the program by scheduling a foreclosure sale of the plaintiff's property while the plaintiff's application for a loan modification was under consideration by it. HAMP arose out of the Emergency Economic Stabilization Act of 2008, and is administered by the Federal National Mortgage Association ("Fannie Mae") as the agent of the Department of the Treasury. *Speleos v. BAC Home Loans Servicing, L.P.*, 2010 WL 5174510, *1 (D. Mass. 2010). The program requires that all mortgage loans owned or guaranteed by Fannie Mae or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and together with Fannie Mae, the government-sponsored agencies or "GSEs") that meet certain requirements be evaluated by the loan servicers for loan modifications. If a borrower qualifies, then the servicer is obligated to modify the loan in accordance with a predefined formula that reduces the borrower's monthly payment to 31% of his gross income for the first five years.[1] In addition, many servicers of mortgage loans not owned by the GSEs have

---

[1] *See, e.g.*, Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, Version 3.0 (hereinafter "HAMP Handbook") at 65, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_30.pdf.

3

executed so-called Servicer Participation Agreements ("SPAs") with Fannie Mae, as agent for the Treasury Department, by which they agree to review and modify loans on similar terms. The Treasury Department, through Fannie Mae, has established guidelines that servicers must follow in evaluating and approving loan modification requests by borrowers. These guidelines are binding on each servicer by way of its servicing agreements with the GSEs or the SPA to which it was a party. I take judicial notice of the fact that Wells Fargo has executed an SPA, and is thus obligated to follow the HAMP requirements with respect to evaluating a loan modification application.[2]

The plaintiff points to Supplemental Directive 09-01, the first of the Treasury Department's HAMP guidelines, to support his allegation that servicers such as Wells Fargo are prohibited from foreclosing on mortgages that are under review for loan modification. This directive also requires servicers to seek alternatives to foreclosure in the event that a loan modification is denied.[3] The plaintiff alleges that Wells Fargo scheduled the foreclosure sale of his property while his loan was being reviewed for a HAMP modification, and that this alleged violation of the HAMP guidelines constituted a breach of contract and of Wells Fargo's duty to act in good faith and with reasonable diligence, justifying, among other things, cancellation of the foreclosure.

The plaintiff's breach of contract claim in Count I of the complaint is premised on the proposition that he is a third party beneficiary of the Wells Fargo's SPA or its servicing

---

[2] *See* Wells Fargo Servicer Participation Agreement, *available at* http://www.treasury.gov/initiatives/financial-stability/housing-programs/mha/Documents_Contracts_Agreements/093010wellsfargobanknaSPA(incltransmittal)-r.pdf; *see also* HAMP Handbook, *supra* note 1 at 17 (explaining the role of the SPA).
[3] Each of the GSEs has its own version of this directive, but all contain the prohibition against foreclosure while loans are under review for modification.

4

executed so-called Servicer Participation Agreements ("SPAs") with Fannie Mae, as agent for the Treasury Department, by which they agree to review and modify loans on similar terms. The Treasury Department, through Fannie Mae, has established guidelines that servicers must follow in evaluating and approving loan modification requests by borrowers. These guidelines are binding on each servicer by way of its servicing agreements with the GSEs or the SPA to which it was a party. I take judicial notice of the fact that Wells Fargo has executed an SPA, and is thus obligated to follow the HAMP requirements with respect to evaluating a loan modification application.[2]

The plaintiff points to Supplemental Directive 09-01, the first of the Treasury Department's HAMP guidelines, to support his allegation that servicers such as Wells Fargo are prohibited from foreclosing on mortgages that are under review for loan modification. This directive also requires servicers to seek alternatives to foreclosure in the event that a loan modification is denied.[3] The plaintiff alleges that Wells Fargo scheduled the foreclosure sale of his property while his loan was being reviewed for a HAMP modification, and that this alleged violation of the HAMP guidelines constituted a breach of contract and of Wells Fargo's duty to act in good faith and with reasonable diligence, justifying, among other things, cancellation of the foreclosure.

The plaintiff's breach of contract claim in Count I of the complaint is premised on the proposition that he is a third party beneficiary of the Wells Fargo's SPA or its servicing

---

[2] *See* Wells Fargo Servicer Participation Agreement, *available at* http://www.treasury.gov/initiatives/financial-stability/housing-programs/mha/Documents_Contracts_Agreements/093010wellsfargobanknaSPA(incltransmittal)-r.pdf; *see also* HAMP Handbook, *supra* note 1 at17 (explaining the role of the SPA).
[3] Each of the GSEs has its own version of this directive, but all contain the prohibition against foreclosure while loans are under review for modification.

4

agreements with the GSEs. While the HAMP program was intended to benefit homeowners by helping them avoid foreclosure, the majority of courts considering the issue have held that consumers have no private cause of action as third party beneficiaries to enforce HAMP violations by their servicers. *See McKensi v. Bank of Am., N.A.*, 2010 WL 3781841, *5-6 (D. Mass. 2010) ("the existing case law weighs decisively in favor of defendant: numerous district courts have interpreted identical HAMP agreements and have come to the conclusion that a borrower is not a third party beneficiary.") (*quoting Hoffman v. Bank of Am., N.A.*, 2010 WL 2635773 (N.D. Cal.) and citing additional cases); *but see Reyes v. Saxon Mortgage Services, Inc.*, 2009 WL 3738177, *2 (S.D. Cal.) (plaintiff's complaint alleging a third party beneficiary status with respect to a HAMP violation was "sufficient to state a plausible claim for breach of contract under a third party beneficiary theory"). Very recently, Judge Gorton of the U.S. District Court in Massachusetts cited the proposition in Restatement (Second) of Contracts § 311(b) that one must look to a contract itself to determine whether the parties intended to give rights to third party beneficiaries. *Speleos*, 2010 WL 5174510 at *5. He held that although the various SPAs and servicing agreements related to HAMP serve to benefit borrowers, nothing in the contracts themselves indicate an intent to create a private right of action in favor of borrowers. I agree with the majority view that the plaintiff is not a third party beneficiary of Wells Fargo's SPA or other relevant HAMP servicing agreements and, therefore, I find that the plaintiff is not likely to succeed on Count I of the complaint.

In Count V of his complaint, the plaintiff alleges that Wells Fargo breached its duty to act in good faith and with reasonable diligence by attempting to foreclose its mortgage on the plaintiff's property. Massachusetts courts have consistently held that in addition to complying

5

with the statutory requirements governing mortgage foreclosure set forth in Mass. Gen. Laws ch. 244, a mortgagee must act in good faith and must use reasonable diligence to protect the interests of the mortgagor. *Williams v. Resolution GGF OY*, 417 Mass. 377, 382-83 (1994). In *Snowden v. Chase Manhattan Mortgage Corp.*, 2003 WL 22519518 (Mass. Super.), the court held that a lender breached this duty by foreclosing a mortgage the day after receiving notice that the borrower had negotiated an agreement to sell the property at a price beneficial to the lender. The court noted that mortgagees in Massachusetts must act as a "trustee for the benefit of all persons interested." *Id.* at *2 (*quoting Taylor v. Weingartner*, 233 Mass. 243, 247 (1916)).

The plaintiff argues that by scheduling a foreclosure sale while the plaintiff's loan modification request was pending, Wells Fargo breached its duty to act in good faith and with reasonable diligence to protect the plaintiff's interests. The plaintiff's argument finds support in *Speleos*, which concluded that even though the borrowers had failed to state a claim for relief under third party beneficiary theory, they could state a claim for negligence on the theory that the defendants had a duty under the HAMP guidelines not to proceed with a foreclosure sale while evaluating the borrowers for a loan modification. *Speleos*, 2010 WL 5174510 at *6. The plaintiff's allegation in Count V of the complaint that Wells Fargo breached its duty of good faith and reasonable diligence is comparable to the negligence claim in *Speleos*.

The evidence thus far indicates that Wells Fargo scheduled and intended to conduct a foreclosure sale of the plaintiff's property while the plaintiff's request for a loan modification was pending before it. Even if the modification was denied on January 19, 2011, eight days prior to the rescheduled foreclosure sale, the plaintiff was not given written notice of the denial nor was he offered other foreclosure mitigation options as required under HAMP guidelines. I find,

6

therefore, that there is a substantial likelihood that the plaintiff will prevail on Count V of his complaint.

In addition, I find that the plaintiff has satisfied the remaining requirements for injunctive relief. While it is possible that the value of the plaintiff's property may depreciate as this case proceeds (although Wells Fargo offered no evidence on this point), I find that any potential detriment to Wells Fargo from depreciation is outweighed by the enormity of the harm to the plaintiff from a foreclosure sale. Further, my order that the plaintiff make payments to the Chapter 13 trustee will protect Wells Fargo from depreciation and unpaid real estate taxes in the event it ultimately prevails in this action. Finally, I find that it is in the public interest to ensure that lenders foreclose on properties only when they are entitled to do so. Also, the neighbors surrounding the plaintiff's property will likely benefit if foreclosure can be avoided.

Under Fed. R. Bankr. P. 7065 the court may require a party who benefits from a preliminary injunction to post security to protect the enjoined party in the event that the injunction turns out to have been wrongly issued. Here, the plaintiff's first and second amended Chapter 13 plans filed in the main case, dated September 24 and October 11, 2010 respectively, each contained provisions in which the plaintiff agreed to make monthly payments to Wells Fargo while his loan modification application was under review. At the evidentiary hearing on the plaintiff's motion, the plaintiff's counsel conceded that these payments have not been made to date. The Chapter 13 trustee noted that the plaintiff's amended Schedule J accompanying his bankruptcy petition lists a total of $1800 in expenses to be dedicated to home mortgage and real estate tax payments. In his memorandum of law in support of his motion for injunctive relief, the plaintiff indicates that his current monthly income is $5829, plus $1,200 in rental income from a tenant.

7

Based on these amounts, a hypothetical HAMP loan modification would involve an initial monthly payment of $1806.99, equal to 31% of total income, after subtracting 25% of the rental income to account for vacancy risk. Accordingly, the preliminary injunction will be conditioned on the plaintiff's making monthly payments of $1800 to the Chapter 13 trustee. This payment requirement shall be retroactive to October 1, 2010 (the first month after the plaintiff proposed to make these payments in his September 24, 2010 amended Chapter 13 plan). Payments shall be held by the trustee for the benefit of Wells Fargo and paid to Wells Fargo in the event it prevails in this action.

The plaintiff shall make payments of $1800 per month to the Chapter 13 trustee on the first day of each month beginning on February 1, 2011, with a ten day grace period for late payment. In order to catch up on payments due for October through January, the plaintiff shall make a double payment of $3600 on the first day of March, April, May and June. The failure of the plaintiff to make any payment when due will be grounds for vacating the injunction.

A separate order shall enter.

Dated: January 26, 2011

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

8

*Exhibit A*

RECEIVED JUL 15 2010

# ORLANS | MORAN PLLC

P.O. BOX 962169
BOSTON, MASSACHUSETTS 02196
TEL: (617) 502-4100
FAX: (617) 502-4101

John T. Precobb
E-mail: jprecobb@orlansmoran.com
Direct Dial: 617-502-4116

Via email and regular mail

July 13, 2010

Josef Culik, Esq.
Culik Law PC
100 Cummings Center
Suite 425G
Beverly, MA 01915

Re:   12 Jarvis Ln., N. Attleboro, MA   *Susan Shaw*
      BAC Loan No. 143320488

Dear Attorney Culik:

      This letter is in response to your letter dated June 11, 2010. This office represents BAC Home Loans Servicing, LP ("BAC"). BAC does not believe that it has violated the M.G.L. c. 93A. In particular, your referenced to the HAMP supplemental directive and HAFA does not apply in this case since Federal National Mortgage Association ("FNMA") is the investor for this loan and the directives and HAFA by way of the directives specifically states that servicers are not required to follow HAMP and HAFA but are required to follow the investor's guidelines. In this case, BAC is required to follow FNMA's guidelines. Notwithstanding this you admit that your client has not even provided documentation to my client to be considered for a loan modification. Your client was notified in October, 2008 by my office that she had the right to request such modification. In addition, my client agreed to postpone the auction to July 21, 2010 which is what you asked for in your letter. For all these reasons my client will not be making an offer of settlement at this time.

Very truly yours,

John T. Precobb

Exhibit B

Subj: **Shaw v. BAC**
Date: 10/14/2011
To: josef@culiklaw.com

Hi Joe,
I have a letter in front of me from Orlans/Moran referencing M.G.L. c. 93A violations. Did you send anyone a demand letter for 93A violations?
sue

Exhibit C

Subj: **RE: sue at 12 Jarvis lane**
Date: 6/7/2010 5:25:59 PM Eastern Daylight Time
From: josef@culiklaw.com
To: Sue234@aol.com

Yes, I will.

---

Josef Culik, Attorney | Culik Law P.C.
Tel 978-910-0248 | Fax 978-910-0247
100 Cummings Center, Suite 425G
Beverly, MA 01915
CulikLaw.com

**From:** Sue234@aol.com [mailto:Sue234@aol.com]
**Sent:** Monday, June 07, 2010 5:24 PM
**To:** josef@culiklaw.com
**Subject:** Re: sue at 12 Jarvis lane

Hi Joe,
So will you be sending a RESPA and requesting mortgage documents?
sue

Subject: RE: sue at 12 Jarvis lane
Date: 4/7/2010 2:08:26 PM Eastern Daylight Time
From:
To:

[illegible] sending a version of the article I wrote for my situation. Each case is different, [illegible] that's a good description of what will happen

[illegible] doing something [illegible]. I generally don't do that because it ends up being more work on my end [illegible] would be if I were simply handling everything in-office. Rather, each time I end up describing everything about it and it takes significantly more time.

With regard to your other question, yes it does mean that the filing fees and process server are in [illegible]

---
Joseph [illegible] Attorney, [illegible] Law PC
Tel: [illegible] Fax: [illegible]
100 Cummings Center, Suite 425G
Beverly, [illegible]
[illegible]

*[handwritten]* The "Piece I wrote" Joseph is referring to is attached

Culik Law 6-Step Method for Massachusetts Loan Modification
Wednesday, October 28, 2009 at 11:08am
My law firm, Culik Law P.C., specializes in Massachusetts loan modification and foreclosure defense. I have developed a loan modification and foreclosure defense method that: (1) increases their chances of a successful workout agreement; (2) gets their cases prioritized and handled by the mortgage company lawyers, rather than a call-center operator with no authority; and (3) protects my clients' credit.

When I receive a call from a potential client looking for help with a loan modification or stopping a foreclosure, the most important question they ask me is "What are you going to do for me?" They want to know whether they're going to get results. My typical client is someone who has worked hard all their life and doesn't want to waste legal fees on some lawyer who's just going to do the bare minimum. Another question they have is "What makes using a lawyer different than using one of those 'loan modification companies'?" The difference is simple. There are only two types of people who are allowed to legally represent you: you yourself, and a lawyer licensed in your state. This means that if you want your rights, your family, and your home protected, you either need to represent yourself or get a lawyer. And chances are that it will cost about the same dollar amount whether you use a loan modification company or a licensed attorney.

What does the average loan modification company do? Not much. They ask you to fill out a financial questionnaire, collect documents that show your income and expenses, such as your tax returns, pay stubs, and utility bills. Then they ask you to give them those documents. Then they submit those documents to the mortgage company. That's all they do. They collect your documents and submit them — something you could easily do yourself — and charge you thousands of dollars to do it. No wonder the loan modification industry was recently called a "scam" by one of the most prominent state attorneys general in the country.

The Culik Law Method for Massachusetts loan modifications and foreclosure defense.

After spending considerable time researching federal and Massachusetts mortgage and consumer-protection law, I have come up with a six-step process for getting a loan modification. It's legal, it's effective, and it's relatively simple.

1. Send a RESPA "Qualified Written Request" to the mortgage company.

The Real Estate Settlement Procedures Act governs what your mortgage company (called a "loan servicer") must do if you have a dispute with them. But the first thing you need to do is see if there is anything that is legitimately worth disputing. There could be overescrowing, allowing the loan servicer to hold on to your money without any good reason. There could be disputes over how much you owe for certain fees the servicer is charging you. There are myriad problems. No matter what the problem is, the method for dealing with them is the same: sending a "qualified written request."

A qualified written request is simply "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." This means that you have to tell the servicer what they did wrong, and give them enough information to verify that that something was actually done wrong.

After you send the qualified written request, the mortgage company has approximately one month to send an acknowledgement letter to you (simply stating your request was received), and three months to resolve your issue. If they fail to do either of these in a timely manner, you can sue them for money damages.

And, perhaps most importantly, it protects your credit. While the qualified written request is pending, the mortgage company is absolutely prohibited from doing any negative credit reporting about your account. This means that if you stop making your mortgage payment during this time, they can't report it to the credit bureaus. This is immensely important, especially if you are trying to refinance or keep your credit score up.

2. Demand the mortgage-related documents and payoff information from your mortgage company

Here in Massachusetts, we have a wealth of consumer-protection laws. Take advantage of them. Some of our fellow citizens in other states aren't quite so lucky, no matter what your opinion is of the lawmakers on Beacon Hill. For instance, if you send a demand for the payoff amount (the amount you would have to pay to pay off your entire loan today), the mortgage company is required to inform you of the amount within five business days. Further, if you send a demand to your mortgage servicer for a copy of all documents related to your account and all documents that have your signature on it, you must received a response within five days.

In the real world, most of these mortgage companies don't care enough to send you this important information within the time allowed. That means that, if they don't send you the information in time, you can sue them for statutory damages, as well as for attorney's fees (if you get an attorney).

3. Analyze your mortgage documents for legal claims.

Getting a mortgage is a complicated process, and there's a lot that can be done wrong during it. Even when you get the mortgage, there can be many reasons that the documents you signed at the closing are defective or could give you a claim against the mortgage company or its agents. It is a highly regulated process. For example, did you know that certain Truth in Lending Act violations actually allow you to rescind your mortgage and get back every single dollar in interest that you've paid to the mortgage company? Did you know that if you paid fees at the closing that are unfair and deceptive, you could have a lawsuit against your mortgage broker? Did you know that it's an illegal trade practice if your broker put you into your loan at a high interest rate, telling you that the mortgage is

... ... that you can refinance in a few years? From the Real Estate
S... Procedures Act to the Truth in Lending Act, to the Massachusetts Consumer
C... Disclosure Act to the Massachusetts Consumer Protection Act, there are
m... potential claims that you have against your mortgage company.

But what do all these claims give you? Leverage over the mortgage company. You can
hold the threat of these claims over the mortgage company's head and use them to force
the company to give you a loan modification.

4. Analyze the mortgage company's responses to 1 and 2.

In addition to the claims in the previous letter, you can also analyze the mortgage
company's responses to the demands you sent mentioned in Paragraphs 1 and 2. If there
are any issues that were ignored, responses that weren't given, or documents that weren't
presented (or weren't presented within the time requirements), you have additional claims.
Most times — at least in my Massachusetts law practice — the mortgage company
doesn't respond in time. This gives you even more leverage on top of the other claims you
found described in the previous section.

5. Send a demand letter under the Massachusetts Consumer Protection Act.
This is usually the last step. Let me be clear — the goal here isn't to go to court, it's to
get you a loan modification. But you need to threaten the mortgage company with a
lawsuit or else they won't pay attention.

Under the Massachusetts Consumer Protection Act, M.G.L. Chapter 93A, there is a
specific process that a consumer must go through in order before he or she can file a
lawsuit under that act. The process is that a consumer must send a "demand letter" stating
what the mortgage company did wrong, and requesting a dollar amount that will right the
wrong. If the company doesn't send a response with a "reasonable" offer of settlement
within 30 days, and you then file a lawsuit against them and win, the amount you win will
be tripled by the court. This is a form of punitive damages that encourages companies to
try to settle consumer disputes before they go to court.

What will probably happen is that you'll receive a call from someone at the mortgage
company asking you to hold off on the lawsuit in exchange for a loan modification
agreement. You'll get to work with someone higher up in the mortgage company
hierarchy; someone with decisionmaking authority who will realize the strengths of your
position. At this point, you will of course need to submit information to the mortgage
company documenting your income and expenses, and then you'll be done — hopefully
with lower payments and more money in the bank to take care of yourself and your family.

6. File a lawsuit to enforce your rights.

This is the last step, and one that you may not have to take. Your hope, if you are like
most people, is that you will simply get a loan modification, resume making payments

t... ...wer, more reasonable rate), and get on with your life. This process can be d... ... and most people are glad to conclude it.

B... ...e mortgage company is being difficult, this is a guaranteed way to force them to d... ... you one-on-one. At this point, the best thing you can do to protect yourself is g... a... attorney. Keep meticulous records during the preceding process and present them to the attorney. The dollar amount of your claims will bring the mortgage company to the ta...le

Conclusion. By following the above steps, you have a much higher chance of getting the loan modification you're looking for. The mortgage company will be forced to deal with you, and you'll get the benefit of dealing with someone with the authority to give you what you want. If you'd like a free consultation, my office would be glad to provide one for Massachusetts loan modification, foreclosure defense, and other consumer law issues. Good luck!

DISCLAIMER: This article is made available by Culik Law P.C. and Attorney Josef Culik for educational purposes only as well as to give you general information and a general understanding of the law, not to provide specific legal advice. By reading this article you understand that there is no attorney-client relationship between you and the author. This article should not be used as a substitute for competent legal advice from a licensed professional attorney in your state.

Top of Form 1

Written about 7 months ago ·

Bottom of Form 1

## In this note

No one.
Mortgage debt waived after bank can't find paperwork



Oct 27th 2009 at 4:30PM

More Text SizeA \ \ Filed under:

Score Little guy, 1; bank, 0. It's a nice change. Two weeks ago, a bankruptcy court in suburban New York did the formerly unthinkable: It waived a homeowner's mortgage debt after the bank trying to foreclose on the home couldn't submit any proof that it actually had a claim on the property. According to the New York Times, when lender PHH Mortgage was asked to provide proof that it actually held the deed for the $461,263 mortgage, it couldn't give the judge any records. Operating on the entirely reasonable principal that someone who claims to possess a piece of paper that gives them ownership to a nearly half-million dollar house should actually have that piece of paper, the judge slapped a stiff and possibly game-changing punishment on the disorganized lender. Real estate experts say this is a more common occurrence than many people realize, and the potential implications are huge. During the go-go mortgage boom years, millions of loans were bundled into financial instruments called securities and sold to investors. They, in turn, often turned around and sold those securities to other investors. Making money hand over fist was the priority; keeping good records of who actually owned which mortgage wasn't. The shambles that many banks' mortgage records are in today could cost them big -- and keep potentially thousands upon thousands of people from losing their homes. The idea that banks should have to prove that they actually own the mortgage that gives them the right to foreclose if the homeowner falls behind on their payments isn't new. A group called Consumer Warning Network has been advocating for homeowners who feel railroaded into foreclosure by the lending industry by advising them to ask the lender to           in court during foreclosure proceedings. Good Morning America covered this tactic last spring. At the time, though, the advice was just intended to help beleageured homeowners buy some time to get their mortgage modified or find another way to come up with the money they owed. It was assumed that the banks had the proof of their claim buried in a filing cabinet somewhere. Now, though, it's clear that some lenders don't have proof that they have the right to foreclose on a home, and at least one judge has put his foot down and refused to let the lender take the home without that proof. It's a small step so far, but it's one that could have far-reaching implications because of the large number of mortgages that were repackaged and resold many times over earlier this decade. Of course, if a homeowner is in foreclosure, he or she will still lose the house if the bank has all the proper documentation. But if the bank can't produce the documentation, it's comforting to think that a judge won't let them put a family on the street just on that lender's say-so that they have the proof... somewhere.
Tags.