UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN A. SHAW,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A., successor by merger to BAC HOME LOANS SERVICING, L.P.<br><br>    Defendant. | Civil Action No. 1:10-cv-11021-DJC |

## BANK OF AMERICA, N.A.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P. ("BANA") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the First Amended Verified Complaint ("Amended Complaint" or "Am. Compl.") filed by Plaintiff Susan A. Shaw ("Plaintiff").

### INTRODUCTION

Plaintiff's claims arise out of two scheduled foreclosure sales of Plaintiff's property, located at 12 Jarvis Lane, North Attleboro, Bristol County, Massachusetts 02760 ("the Property"). Am. Compl. ¶¶ 1-4.[1]  Plaintiff sues BANA, her mortgage servicer, in connection with BANA's alleged attempts to foreclose on the Property while Plaintiff was allegedly under consideration for a loan modification under the U.S. Treasury's Home Affordable Modification Program ("HAMP"), as well as BANA's alleged origination of an "unfair loan" to Plaintiff. *Id*.

---

[1] For the purposes of this motion only, BANA cites to the factual allegations of the Complaint for the purposes of establishing whether Plaintiff has made sufficient allegations to state a claim for which relief can be granted. BANA reserves its right to challenge the accuracy of any of Plaintiff's factual allegations in later proceedings, if necessary.

Plaintiff asserts claims against BANA for Breach of Contract (Count I), violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692k ("FDCPA") (Count II), Negligence (Count III), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV), a violation of G.L. c. 93A based on predatory lending (Count V), Wrongful Foreclosure (Count VI), a violation of the Real Estate Settlement Procedures Act ("RESPA") (Count VII), and a violation of the Truth in Lending Act ("TILA") (Count VIII).

All of Plaintiff's claims fail as a matter of law. Plaintiff's contract based claims fail because Plaintiff has failed to demonstrate that she is an intended third-party beneficiary of the servicing contract entered into between BANA and the Federal National Mortgage Association ("Fannie Mae"). Plaintiff's FDCPA claims fail because Plaintiff has failed to demonstrate that BANA's actions here were "unfair or unconscionable." Plaintiff's negligence claim fails because she has failed to demonstrate that BANA owed her a duty of care. Plaintiff's M.G.L. c. 93A claim based on predatory lending fails because Plaintiff has failed to demonstrate that BANA originated her loan, or that her demand letter meets statutory requirements. Plaintiff's wrongful foreclosure claim fails because BANA had a valid assignment of Plaintiff's mortgage at the time of foreclosure. Plaintiff's RESPA and TILA claims fail because Plaintiff has not met the pleading requirements for these claims under Fed. R. Civ. P. 8(a).

## FACTUAL BACKGROUND

### A. Procedural Background

According to the Amended Complaint, Plaintiff currently resides at 12 Jarvis Lane, North Attleboro, Bristol County, Massachusetts 02760 ("the Property"). Am. Compl. ¶¶ 8, 10. On or about August 15, 2006, Plaintiff refinanced the Property with Countrywide Home Loans, Inc. ("Countrywide") in the amount of $400,000 (Loan # *****0488, hereinafter "the Loan"). Am

Compl. ¶ 10. A copy of the Note is attached hereto as Exhibit A.[2] To secure the Note, the Plaintiff executed a mortgage on the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as a designee for Countrywide and Countrywide's successors and assigns. A copy of the Mortgage is attached hereto as Exhibit B. According to the Amended Complaint, Plaintiff fell behind in her monthly payments, and applied for a loan modification pursuant to HAMP on or around June 15, 2010. *See* Am. Compl. ¶¶ 11, 45. A foreclosure sale for the Property was scheduled for June 18, 2010. Am. Compl. ¶ 3.

Plaintiff filed the instant action in the U.S. District Court for the District of Massachusetts, on or about June 17, 2010. (Docket Entry #1). Plaintiff also filed a Motion for Ex Parte Restraining Order, Preliminary Injunction and Request for Short Order of Notice, requesting that the Foreclosure Sale be postponed or cancelled while Plaintiff was under consideration for a HAMP modification (Docket Entries #2-3, dated June 17, 2010). The Foreclosure Sale scheduled for June 17, 2010 did not go forward, and Plaintiff withdrew her Motion for Ex Parte Restraining Order, Preliminary Injunction, and Request for Short Order of Notice the same day. (Docket Entry #4, dated June 17, 2010).

On January 12, 2011, Plaintiff's application for a HAMP modification was denied. Am. Compl., Ex. C.[3] On or around June 21, 2011, a foreclosure sale was conducted, at which Fannie Mae purchased the Property. Am. Compl. ¶¶ 12, 13. Plaintiff filed her Amended Complaint in this action on March 29, 2012. (Docket Entry #31).

### B. Factual Background on the HAMP Program

---

[2] In considering this motion, the Court may consider Plaintiff's 2006 Mortgage and Note without converting the instant Motion to one for summary judgment, as these documents are central to Plaintiff's claims. *See Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (*citing Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleading if they are referred to in the plaintiff's complaint and are central to her claim.").

In early 2009, acting pursuant to Section 109 of the Emergency Economic Stabilization Act of 2008, the United States Department of the Treasury ("Treasury") announced the Home Affordable Modification Program, or "HAMP." Am. Compl. ¶ 34. HAMP is a program intended to provide eligible borrowers with loan modifications or other means of avoiding foreclosure. *Id*. at ¶ 35.

All servicers who service loans that are owned or guaranteed by Fannie Mae must participate in the HAMP program as to those loans. Am. Compl. ¶ 35. This obligation derives from the Mortgage Selling and Servicing Contract ("MSSC") entered into by Fannie Mae and mortgage servicing companies. *See Id*. at ¶¶ 31-33, 37. The MSCC incorporates by reference Fannie Mae's Selling and Servicing Guides. *See Id*. These Guides require servicers of mortgage notes owned by Fannie Mae to participate in HAMP and to comply with HAMP directives and guidelines. *Id*. at ¶ 18. Lenders servicing mortgages not owned or guaranteed by Fannie Mae or Freddie Mac may elect to participate in HAMP by executing a Servicer Participation Agreement ("SPA") with Fannie Mae. *See Ording v. BAC Home Loans Servicing*, No. 10-10670, 2011 WL 99016, *8 n.4 (D. Mass. Jan. 10, 2011).

## STANDARD OF REVIEW

A complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to satisfy Rule 8, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under *Bell Atlantic Corp. v. Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . "and the Complaint must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." 550 U.S. 544, 555 – 56, n.3 (2007) (citations omitted).

4

The Supreme Court reiterated this standard in *Ashcroft v. Iqbal*, stating that the federal rules "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009). A complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," requiring "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Even construing the Amended Complaint in the light most favorable to Plaintiff and taking her factual allegations as true, Plaintiff has failed to state a claim for which relief may be granted.

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO BRING A THIRD PARTY BREACH OF CONTRACT CLAIM AGAINST BANA

As numerous federal courts have made clear, HAMP does not provide for a right to privately enforce its terms. *See, e.g.*, *McBride v. American Home Mortg. Servicing, Inc.*, No. 11-10998, 2012 WL 931247 (D. Mass. Mar. 19, 2012) (no private right of action exists under HAMP).[4] This is because HAMP is not a statute or regulation – it is merely a series of contractual agreements between mortgage servicers, such as BANA, and certain federal agencies, such as Fannie Mae. *See Hoffman v. Bank of Am., N.A.*, No. 10-2171, 2010 WL 2635773, at *1 (N. D. Cal. June 30, 2010).

Here, Plaintiff seeks to circumvent the fact that HAMP's requirements cannot be enforced privately by styling her claim as a one for breach of contract. Plaintiff alleges that BANA entered into a Mortgage Selling and Servicing Contract ("MSSC") with Fannie Mae,

---

[4] *See also Marley v. Bank of Am., N.A.*, No. 10-10885, 2012 WL 847374 (D. Mass. Mar. 13, 2012) (same); *Ording*, 2010 WL 99016, at *7 (same); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-cv-10380, 2010 WL 4825632 (D. Mass. Nov. 24, 2010) (same); *Marks v. Bank of Am., N.A.*, No. 3:10-cv-08039, 2010 WL 2572988, at *5-7 (D. Ariz. June 22, 2010) (same); *Aleem v. Bank of Am., N.A.*, No. 09-01812, 2010 WL 532330, *4 (C.D. Cal. Feb. 9, 2010) (same); *Gonzales v. First Franklin Loan Servs.*, No. 1:09-cv-00941, 2010 WL 144862, *18 (E.D. Cal. Jan. 11, 2010) (no private right of action under EESA).

5

pursuant to which BANA is obligated to comply with Fannie Mae's servicing requirements, including HAMP program guidelines and directives. Am. Compl. at ¶¶ 31-33, 37, 41. More specifically, Plaintiff alleges a violation of Fannie Mae Announcement 09-05R, a supplemental directive which states that "servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the [HAMP] program." *Id*. at ¶ 39. Plaintiff alleges that BANA breached the MSCC when it scheduled a foreclosure sale of the Property without first assessing Plaintiff's eligibility for a HAMP modification. *See Id*. at ¶¶ 41-46.[5] Plaintiff's breach of contract claim is based on the theory that she is entitled to enforce the MSCC as an intended third party beneficiary. *Id*. at ¶ 38.

However, federal courts, including within this District, that have considered this issue have consistently held that borrowers are not intended third party beneficiaries of mortgage servicing contracts between servicers and government agencies. *See, e.g., Markle v. HSBC Mortgage Corp*., No. 10-40189, 2011 WL 6944911 (D. Mass. July 12, 2011) (granting motion to dismiss); *Speleos v. BAC Home Loans Servicing, L.P.*, 755 F. Supp. 2d 304, 307-310 (D. Mass. 2010) (dismissing plaintiff's claim for breach of contract); *Fellows v. CitiMortgage, Inc*., 710 F. Supp. 2d 385, 406 (S.D.N.Y. 2010) (granting motion to dismiss). In fact, plaintiffs in *Markle* and *Speleos* brought nearly identical claims to those raised here, alleging that their loan servicer had violated the MSCC by not evaluating their eligibility for a loan modification prior to scheduling a foreclosure sale. *Markle*, 2011 WL 6944911 at *1-3; *Speleos*, 755 F. Supp. 2d at 304, 306. The court in both cases held that the clear language of the MSSC precludes a finding that plaintiffs are intended beneficiaries. *Markle*, 2011 WL 6944911 at *7; *Speleos*, 755 F. Supp.

---

[5] Plaintiff alleges that she is currently "under consideration" for a HAMP modification, but "no offer to participate in HAMP has yet been made." Am. Compl. ¶ 44. However, according to the letter attached by Plaintiff to her Amended Complaint, Plaintiff's application for a HAMP modification was denied on January 12, 2011. Am. Compl. ¶ 60, Ex. C.

6

2d at 310.

Enforcement of a contract by beneficiaries is limited to those who are *intended* beneficiaries; and there is a presumption that beneficiaries of government contracts are merely *incidental* beneficiaries. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2009). Both federal law and Massachusetts common law apply the test of the Second Restatement of Contracts to determine whether or not a party is an intended beneficiary of a government contract. *Markle*, 2011 WL 6944911 at *4. According to the Second Restatement of Contracts § 313(2), a party will only be considered to be an intended beneficiary to a government contract if:

(a) the terms of the promise provide for such liability; or
(b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach

Section 313(2)(a) of the Restatement is inapplicable here, as neither the text of the MSCC nor its incorporated guides indicate a clear intent to grant borrowers the right to enforce these contracts through private rights of actions. *Speleos*, 755 F. Supp. 2d at 310. In fact, the Selling Guide states just the opposite: "No borrower or other third party is intended to be a legal beneficiary of the MSSC or the Selling Guide or Servicing Guide or to obtain any rights or entitlements through Fannie Mae's lender communications or contracts." Fannie Mae Single Family 2011 Selling Guide, § A2-1-01 (effective Apr. 1, 2009).

As to Section 313(2)(b), Plaintiff has also failed to present any evidence that "direct action against the promisor is consistent with the terms of the contract." Federal courts that have considered the issue have consistently held that third party beneficiary claims for breach of contract are not consistent with the terms of these servicing contracts. *See supra*, p. 6. Although

borrowers are meant to benefit from the HAMP program that has been incorporated by reference into the servicing contracts, the contracts do not contain any language indicating that borrowers ought to be able to *enforce* these contracts as third party beneficiaries.  See *Markle*, 2011 WL 6944911 at *6 ("If plaintiffs were third party beneficiaries, every homeowner-borrower in the United States who has defaulted on mortgage payments or is at risk of default could become a potential plaintiff.  Finding such a broad and indefinite a class of third-party beneficiaries would be inconsistent with the clear intent standard for government contracts set by the Restatement.").

II. **PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR A BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

The implied covenant of good faith and fair dealing "simply obligates each party to a contract not to act in such a way as to impair the other party's rights to reap the fruits of the contract." *Anilus v. OneWest Bank, FSB*, No. 201001774, 2011 WL 2735052 at *3 (Mass. Super. May 3, 2011).  As such, a claim for breach of the implied covenant of good faith and fair dealing is dependent on demonstrating that an enforceable contract exists between the parties.  *See Id*.

Here, Plaintiff alleges that BANA breached the covenant of good faith and fair dealing by "foreclos[ing] on the property before giving [Plaintiff] an opportunity to establish whether the figures used in the [HAMP] evaluation were accurate and before seeking alternatives to foreclosure." Am Compl. ¶ 63.  However, Plaintiff fails to identify the contract which forms the basis for her claim, or any additional factual support for the claim.  *See Id*.  Plaintiff's one-sentence allegation in support of her claim is clearly insufficient to meet the pleading requirements of Fed. R. Civ. P. 8(a).

Furthermore, courts within this District have consistently held that borrowers may not bring claims of breach of good faith and fair dealing based on HAMP servicing contracts for which they are not intended beneficiaries, as is the case here.  *See McBride*, 2011 WL 931247 at

*2 ("there is no basis to treat HAMP contractual provisions (which plaintiffs have no authority to enforce) as obligations pursuant to the Massachusetts common law duty to execute foreclosures in good faith"); *Markle*, 2011 WL 6944911 at *7 (holding that "Because plaintiffs are neither parties to the MSSC nor intended beneficiaries of it, defendant owes them no duty under the implied covenant"); *Speleos*, 755 F. Supp. 2d at 312 (dismissing plaintiffs' claim for breach of the covenant of good faith and fair dealing).

### III.   PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

Here, Plaintiff alleges that BANA violated two separate sections of the FDCPA related to BANA's alleged scheduled foreclosure sales of the Property. However, Plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6) for either of these claims.

First, Plaintiff claims that BANA violated 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect a consumer debt," by scheduling foreclosure of the Property prior to evaluating Plaintiff for a HAMP modification or other loss mitigation efforts. Am. Compl. ¶ 57. However, scheduling a foreclosure sale under these circumstances is not specifically prohibited by § 1692f. Section 1692f prohibits a "debt collector" from "taking or threatening any nonjudicial action to effect disposition or disablement of a property" if:

> (a) there is no present right to possess the property as collateral,
> (b) there is no present intention to take possession of the property, and
> (c) the property is exempt by law from such dispossession or disablement;

15 U.S.C. § 1692f(6).

If plaintiff merely alleges that a defendant has violated 1692f's general prohibition against "unfair or unconscionable" collection practices, the conduct alleged in the complaint

9

ought to rise to the level of "egregious conduct" that 1692f is designed to prevent. *See Sullivan v. Credit Control Services, Inc.*, 745 F. Supp. 2d 2, 12-13 (D. Mass. 2010). Here, Plaintiff has alleged that it was "unfair or unconscionable" for BANA to schedule a foreclosure sale when Plaintiff "has not been evaluated for a loan modification or other loss-mitigation efforts under the federal Home Affordable Modification Program." Am. Compl. ¶ 57. However, Plaintiff does not challenge the fact that she was behind in her payments, nor does she deny that BANA was entitled by the Mortgage and the Note to seek foreclosure for her failure to make her payments. *See* Am. Compl. at ¶ 11; Mortgage §22, Ex. B; Note §6, Ex. A. Plaintiff also mischaracterizes the status of her HAMP modification review, alleging she "has not been evaluated," despite attaching to her Amended Complaint a HAMP denial letter, dated January 12, 2011. *See* Am. Compl. ¶ 57, Ex. C. Aside from Plaintiff's own mischaracterization of BANA's actions, there are no facts alleged or authority cited which demonstrate that scheduling a foreclosure under these circumstances constitutes the type of "unfair or unconscionable" practice that § 1692f is meant to prohibit.

Plaintiff's second FDCPA claim fails for similar reasons. Plaintiff claims BANA violated § 1692e(5) by threatening foreclosure when such action "could not legally be taken." Am. Compl. ¶¶ 55, 57. Plaintiff alleges that scheduling a foreclosure sale for Plaintiff's Property violates § 1692e(5) because, pursuant to Title 209 of the Code of Massachusetts Regulations, Section 18.21, it is illegal for a debt collector to use "unfair or unconscionable means in servicing any loan." 209 Code Mass. Regs. § 18.21 (2004). However, Plaintiff does not cite to any factual or legal support for her allegation that BANA's conduct meets the definition of "unfair or unconscionable" under § 18.21, nor does she allege that BANA has committed any act that is prohibited by that regulation.

10

Thus, Plaintiff's claim under 15 U.S.C. § 1692e(5) fails for the same reason as her § 1692f claim – Plaintiff has failed to allege any facts or cite any authority which demonstrates that scheduling a foreclosure under these circumstances constitutes the type of "unfair or unconscionable" practice that § 1692e(5) is meant to prohibit.

### IV. PLAINTIFF CANNOT MAINTAIN A NEGLIGENCE CLAIM AGAINST BANA BECAUSE BANA DOES NOT OWE HER A DUTY OF CARE

Here, Plaintiff alleges that BANA was negligent in determining that Plaintiff was ineligible for a HAMP modification without "providing the figures used in their conclusion." Am. Compl. ¶ 60. Plaintiff further alleges that BANA was negligent in "proceeding to auction" on the Property prior to "finishing the review for HAMP and other loss mitigation efforts under HAMP." *Id*. at ¶ 61. However, Plaintiff cannot maintain a negligence claim against BANA, as BANA does not owe her a duty of care. *See infra*, pg. 12.

To state a claim for negligence, a plaintiff must allege that a defendant: (1) owed a legal duty to the plaintiff; (2) breached that duty; and (3) was the proximate or legal cause of; (4) actual damage or injury to the plaintiff. *See Jorgensen v. Mass. Port Authority*, 905 F. 2d 515, 522 (1st Cir. 1990). A plaintiff cannot, as a matter of law, establish a negligence claim against a defendant, where plaintiff cannot or does not establish that defendant owed a duty of care to plaintiff. *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801 (2004). The relationship between a servicer and debtor alone does not give rise to such a duty. *See Corcoran v. Saxon Mortgt. Servs., Inc*., No. 09-11468, 2010 WL 2106179 *1, 3 (D. Mass. May 24, 2010) (holding that, "under Massachusetts law, neither a mortgage holder nor its servicer owes a fiduciary duty to a borrower"). Therefore, in order for Plaintiff to prevail on her theory of negligence, she must show that a duty of care exists separate and apart from her servicer-debtor relationship with BANA.

11

Here, Plaintiff has merely alleged that BANA violated HAMP guidelines, while failing to demonstrate that BANA owed her a duty of care by virtue of its participation in the HAMP program. *See* Am. Compl. ¶¶ 61-64. In fact, this Court has consistently held that HAMP cannot itself create a duty of care. *See, e.g., Markle*, 2011 WL 6944911 at *8 (holding that "[t]o find a legal duty within the Helping Families Save Their Homes Act—a duty that would expose mortgage servicers to expanded liability under HAMP—would not accord with Congress's intent"); *see also Provost v. Saxon Mortg. Services, Inc.*, No. 4:11-cv-40137, 2012 WL 1065481 at *3 (D. Mass. Mar. 27, 2012) (dismissing plaintiff's negligence claim); *Young v. Wells Fargo Mortg. Servicing*, No. 11-10757, 2012 WL 734187 at *4 (D. Mass. Mar. 7, 2012) (same); *Brown v. Bank of America et al.*, No. 1:10-cv-11085, 2011 WL 1311278, at *8 (D. Mass. Mar. 31, 2011)(same).[6] Since Plaintiff cannot demonstrate that BANA owed her a duty of care, her negligence claim should be dismissed.

## V. PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR A VIOLATION OF G.L. c. 93A BASED ON PREDATORY LENDING

Plaintiff has failed to adequately plead a claim for a violation of G.L. c. 93A ("93A")[7] based on predatory lending, as she has failed to comply with the procedural requirements of this statute. G.L. c. 93A § 9 ("Section 9") requires that "[a]t least thirty days prior to the filing of any [action under Section 9], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be

---

[6] Plaintiff may point to Judge Gorton's holding in *Speleos* that a violation of HAMP guidelines "may constitute evidence of a breach of duty" in order to support her claim of negligence here. *See Speleos*, 755 F. Supp. 2d at 311. However, in all subsequent cases other Judges in this Court have consistently declined to follow Judge Gorton's holding in Speleos. *See Provost*, 2012 WL 1065481 at *3; *Young*, 2012 WL 734187 at *4; *Markle*, 2011 WL 6944911 at *8; *Brown*, 2011 WL 1311278 at *8.

[7] Plaintiff has failed to identify under which provision of the G.L. c. 93A she seeks to hold BANA liable. However, the only section of 93A under which Plaintiff could assert a claim against BANA is G.L. c. 93A § 9 ("Section 9"), which provides for a private right of action for any consumer who claims to have been harmed by another person's "unfair or deceptive" trade practices.

mailed or delivered to any prospective respondent." G.L. c. 93A, § 9(3). This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. S. New Eng. Sch. of Law*, 389 F. 3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.,* 368 Mass. 812, 813 (1975) (rescript)). In fact, the making of a written demand is "a special element [that] must be alleged and proved." *Entrialgo*, 368 Mass. at 813 ("The purpose of the demand letter is to facilitate the settlement and damage assessment aspects of c. 93A and as such the letter and notice therein is a *procedural requirement the absence of which is a bar to suit*.") (emphasis added). Without the successful mailing or delivery of the required demand letter, a claim under Section 9 must be dismissed.

Here, Plaintiff has failed to make such a successful mailing or delivery. Although Plaintiff sent a demand letter to BANA[8] on or about June 11, 2010,[9] the letter fails to "describe the unfair or deceptive act or practice relied upon and the injury suffered" with the requisite specificity. *See* M.G.L. ch. 93A, § 9(3). An adequate 93A demand letter must "define the injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and enables him to make 'a reasonable tender of settlement.'" *McKensi v. Bank of Am., N.A.*, No. 09-11940, 2010 WL 1781841 (D. Mass. Sept. 22, 2010) (internal citations omitted). Here, Plaintiff's demand letter alleges that BANA has failed to comply with both HAMP and "HAFA" (the Home Affordable Foreclosure Alternatives Program) by

---

[8] Plaintiff has also brought her 93A claim against the wrong entity. Courts have held that predatory lending may be considered as an "unfair or deceptive trade practice" under 93A if the plaintiff can demonstrate that the defendant engaged in "the *origination* of a home mortgage loan that the *lender* should recognize at the outset the borrower is not likely to be able to repay." *Comm. v. Fremont Inv. & Loan*, 452 Mass. 733, 749 (2008) (emphasis added). Here, Plaintiff has brought a claim against BANA, even though she states in her Amended Complaint that her loan was originated by Countrywide. *See* Am. Compl. ¶ 10. Plaintiff was given the opportunity to amend her complaint, and yet failed to include Countrywide as a named defendant.

[9] A copy of Plaintiff's Demand Letter served upon BANA is attached hereto as Exhibit C.

13

scheduling a foreclosure on the Property prior to considering her for a HAMP loan modification and other loss mitigation alternatives. *See* 93A Demand Letter, Ex. C, Pg. 2. However, Plaintiff fails to make a single allegation in her demand letter regarding the manner in which her loan was originated, and does not so much as mention the phrase "predatory lending." *See generally Id.*[10] Plaintiff's failure to comply with the demand letter requirements contradicts the very purpose of Section 9, and such failure mandates dismissal of Plaintiff's G.L. c. 93A claim. *See Entrialgo*, 368 Mass. at 813.

## VI. PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR WRONGFUL FORECLOSURE

In a title theory state like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt. *See U.S. National Bank v. Ibanez,* 458 Mass. 637, 649 (2011). The homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee. *Id.* When foreclosing under the contractual rights set forth in the mortgage, the foreclosing entity must have an assignment of the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale. *See Kiah v. Aurora Loan Servs., LLC,* No. 10-40161, 2011 WL 841282 at *6 (D. Mass. Mar. 4, 2011). Because BANA had a valid assignment of Plaintiff's mortgage at the time of the notice of sale, it had the authority to conduct the foreclosure sale under Massachusetts law, and Plaintiff's claim for wrongful foreclosure ought to be dismissed.

### 1. BANA Was the Current Holder of the Note at the Time of Foreclosure

---

[10] Plaintiff also failed to meet the requirements of having "alleged and proved" mailing and receipt of her Demand Letter in the Complaint. *See Entrialgo*, 368 Mass. at 813. Plaintiff neither refers to nor attaches her Demand Letter to the Complaint. Compl. ¶¶ 64-66 (describing Plaintiff's claims under G.L. c. 93A, but failing to mention any demand letter).

14

Here, Plaintiff alleges that "it is confusing at best who has the right to even conduct this foreclosure," whether it is "MERS or Bank of America or Fannie Mae." Am. Compl. ¶ 67. However, not only is the chain of assignments in this case clear, Plaintiff provided all of the relevant documents as exhibits to her Amended Complaint. Plaintiff has attached a document showing that, on November 8, 2009, MERS assigned both the Mortgage and the Note to BANA. Am. Compl., Ex. H. She has also attached a June 3, 2011 letter from BANA in which BANA (through its attorneys) notified Plaintiff of its intention to foreclose pursuant to the statutory power of sale. Am. Compl., Ex. G. Finally, Plaintiff attached a document showing that BANA published the notice of foreclosure auction in the local newspaper, and this notice properly identified BANA as the holder of the mortgage for this Property. *Id.*

In *Akar v. Federal Natl. Mortg. Ass'n.*, this Court dismissed a similar claim, holding that defendant Wells Fargo had a valid assignment at the time of the foreclosure, because the plaintiff alleged: "that [plaintiff's] mortgage was assigned to Wells Fargo on September 22, 2008 and recorded on September 24, 2008," "Harmon notified Akar of Wells Fargo's intent to foreclose on the Property on February 10, 2009 by way of a public auction," and "Harmon also arranged for notices of the foreclosure auction to be published in the local newspaper." No. 10-10539, 2012 WL 538212 *1, 11 (D. Mass. Feb. 9, 2012). Here, just as in *Akar*, Plaintiff's complaint itself demonstrates that Defendant was the holder of Plaintiff's mortgage at the time of the foreclosure.

2.       **The Assignment from MERS to BANA is Enforceable**

In her Amended Complaint, Plaintiff also quotes a holding from the case of *Federal National Mortg. Ass'n. v. Goodrich* that "the MERS system confuses the identity of the beneficiary and violates the Trust Deed Act's recording requirement." Am. Compl. ¶ 67. However, Plaintiff fails to provide any explanation as to how this case relates to her wrongful

15

foreclosure claim. *See Id.*[11] Presumably, Plaintiff cites to the *Goodrich* case in an attempt to challenge the validity of the assignment from MERS to BANA that occurred on November 8, 2009, on the basis that MERS lacks authority to act as nominee on behalf of the lender and its successors in interest to enforce these parties' rights under the Mortgage. However, this argument fails because: (a) Plaintiff lacks standing to challenge the mortgage assignment, and (b) this Court has consistently held that MERS' status as mortgagee comports with Massachusetts law. *See infra*, Pgs. 16-17.

        **a.**      **Plaintiff Lacks Standing to Challenge the Assignment of the Mortgage**

Under Massachusetts law, a plaintiff lacks standing to challenge a contract when the plaintiff is a stranger to that contract. *See Kerr v. Vince*, No. 07-30021, 2010 WL 1416511 *1, 9 (D. Mass. Apr. 1, 2010). Here, Plaintiff was only a party to the Mortgage. She was a stranger to the assignment and, as this Court has repeatedly held, she may not challenge the validity of that document. *See Oum v. Wells Fargo, N.A.*, Nos. 11-11663, 11-11683, 2012 WL 390271 *1, 4 (D. Mass. Feb. 8, 2012) ("[A] mortgagor is not an intended beneficiary of an assignment of a mortgage . . . Thus, plaintiffs lack standing to challenge the validity of the assignments"); *Peterson v. GMAC Mortg., LLC*, No. 11115, 2011 WL 5075613, at *4 (D. Mass. Oct. 25, 2011) ("[P]laintiffs have no legally protected interest in the Mortgage assignment from MERS to GMAC and therefore lack standing to challenge it."); *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011); *Kelly v. Deutsche Bank Nat'l Trust Co.,* 2011 WL 2262915, at *3 (D. Mass. June 9, 2011); *In re Almeida*, 417 B.R. 140, 149-50 (Bankr. D. Mass. 2009).

        **b.**      **MERS Properly Served as Nominee and Mortgagee on the Mortgage**

---

[11] This type of allegation is clearly insufficient under Rule 8's notice pleading requirements. *See Twombly*, 550 U.S. at 555; *see also, e.g., Fraine v. Deutsche Bank Natl. Trust Co.*, No. 09-cv-12214, 2011 WL 308094 at *1 (D. Mass. Jan. 28, 2011)(dismissing challenge to foreclosure for failure to meet Twombly pleading standard).

Borrowers in Massachusetts and elsewhere have repeatedly raised the argument that MERS may not serve as nominee on a mortgage in order to challenge foreclosure without success. However, this Court has consistently rejected this argument and Plaintiff's claims should likewise be rejected here. *See, e.g., Culhane v. Aurora Loan Servs.*, No. 11-11098, 2011 WL 5925525, *1, 15 (D. Mass. Nov. 28, 2011) ("MERS's status as mortgagee in a nominal capacity for the note holder comports with Massachusetts law"); *Kiah*, 2011 WL 841282, at *4 (rejecting Plaintiffs' argument where "[t]he plain language of the mortgage . . . states that MERS was acting as nominee for [the original lender] and its 'successors and assigns.' The complaint does not suggest any plausible basis under which that language should be disregarded, and thus fails to state a claim as to that theory of recovery.

In her mortgage, Plaintiff agreed to MERS's role as nominee and mortgagee. MERS is fully disclosed in the Mortgage as mortgagee and nominee of the lender and the nominee of the lender's successors and assigns in the promissory note. *See* Mortgage, attached hereto as Exhibit B, at p. 3 ("Borrower understands and agrees that . . . if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to . . . take *any action required* of Lender . . .") (emphasis added). Plaintiff also agreed that MERS would be entitled "to exercise any or all" of the Lender's interests under the Mortgage including "the right to foreclose and sell the Property . . ." *Id.* As courts have repeatedly held, plaintiffs cannot be heard to complain about MERS' status as nominee when faced with foreclosure after a loan default.

## VII. PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

Count VII, brought purportedly pursuant to RESPA, fails because Plaintiff has not set

forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a)(2). Plaintiff's single-paragraph RESPA allegation states that:

> The defendant has also violated RESPA. Giving or accepting fees, kickbacks and/or things of value in exchange for, referrals of settlement service business, and splitting fees and receiving unearned fees for services not actually performed.

Am. Compl. ¶ 68. Plaintiff then cites to Exhibit J, which is a check written out to Plaintiff from the *Alston v. Countrywide Financial Corp*. PMI Settlement Fund, in the amount of $126.05. *Id*., Ex. J. Plaintiff does not state which section of RESPA she is suing under, nor does she provide any explanation for why this settlement check demonstrates that BANA has violated any portion of the RESPA statute.

Plaintiff's RESPA allegation appears to simply be a recitation of RESPA § 2607, which states that "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service," and "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service." 12 U.S.C. § 2607(a)-(b). Plaintiff's allegation is a prime example of the types of "labels and conclusions" that the Supreme Court held insufficient to state a cognizable claim for relief. *See Twombly*, 550 U.S. at 555. Plaintiff's RESPA allegation fails to meet the required pleading standard because it contains no factual allegations to support Plaintiff's assertion that she is entitled to the relief that she seeks.

### VIII. PLAINTIFF HAS NOT ADEQUATELY PLEAD A CLAIM FOR VIOLATIONS OF THE TRUTH IN LENDING ACT

Plaintiff has failed to state a claim under the Truth in Lending Act ("TILA") because she

has not met the pleading requirements set forth by Fed. R. Civ. P. 8(a)(2). Plaintiff's single-paragraph TILA allegation states that:

> The defendant has violated TILA failing to clearly and accurately disclose the number, amounts and timing of payments scheduled to repay the obligation. The mortgage broker told me my payments would be $2800 and the mortgage insurance would come of after a year. Both were untrue.

Am. Compl. ¶ 69. Plaintiff does not state which section of TILA she is suing under, nor does she allege that BANA has violated a specific provision of TILA. *See Id*.

For Plaintiff to properly allege a TILA violation, she must plead, among other things, specific factual allegations establishing that BANA is a "creditor" for purposes of TILA. *See Ording*, 2011 WL 99016 at *3-4 (holding that "only creditors may be held liable for TILA violations" and dismissing plaintiff's TILA claim for failure to adequately plead that BAC Home Loans Servicing is a "creditor" as defined by the statute). Here, Plaintiff fails to do so, and her TILA claim must be dismissed for failure to meet the pleading requirements of Fed. R. Civ. P. 8(a).

## CONCLUSION

For the reasons stated above, BANA respectfully requests that this Court grant their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim for which relief can be granted, and dismiss the Amended Complaint its entirety with prejudice.

Respectfully submitted,

BANA, N.A., successor by merger to BAC HOME LOANS SERVICING, L.P.

By its attorneys,

/s/ Kathleen E. Roblez
Chad W. Higgins (BBO# 668924)
Kathleen E. Roblez (BBO #676443)
GOODWIN PROCTER LLP
EXCHANGE PLACE
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
chiggins@goodwinprocter.com
kroblez@goodwinprocter.com

Dated: May 14, 2012

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on May 14, 2012.

/s/ Kathleen E. Roblez

Dated: May 14, 2012