UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN A. SHAW, | ) |
|       Plaintiff, | ) |
|       v. | ) Civil Action No. 10-11021-DJC |
| BAC HOME LOANS SERVICING, LP d/b/a/ BANK OF AMERICA HOME LOANS, | ) |
|       Defendant. | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 March 1, 2013

**I.     Introduction**

Plaintiff Susan A. Shaw ("Shaw") brings this lawsuit against Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, L.P. ("BAC"), to challenge actions leading to the eventual foreclosure of her residence. Am. Ver. Compl., D. 31. BAC has moved to dismiss all counts alleged in Shaw's complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 33. For the reasons stated in this memorandum, the Court GRANTS in part and DENIES in part BAC's motion to dismiss, GRANTS Shaw's request to amend her complaint to add a claim for fraud and ALLOWS her to file a motion for lis pendens.

**II.    Background**

The Court accepts the following non-conclusory factual allegations drawn from Shaw's amended verified complaint, D. 31, as true for the purposes of resolving this motion and draws all inferences in Shaw's favor. Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011). Shaw lives at 12 Jarvis Lane in North Attleboro, Massachusetts ("the Property"). ¶¶ 8,

10.[1]  She refinanced the Property on August 15, 2006 with a $400,000 loan from America's Wholesale Lender, also known as Countrywide Home Loans. ¶ 10. The loan was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). ¶ 10.

### A.     First Foreclosure Attempt

At some point, Shaw fell behind on her mortgage payments. ¶ 11. On November 18, 2009, MERS assigned the mortgage and note to BAC, filing the assignment with the Bristol County (Northern District) Registry of Deeds. D. 31 Exh. H.[2] BAC scheduled a foreclosure sale for June 18, 2010. ¶ 3. On June 17, 2010, Shaw, through counsel, filed this lawsuit and a motion seeking a temporary restraining order to block the sale. D. 1-3. In her original complaint, Shaw alleged that BAC had violated the Home Affordable Modification Program ("HAMP") by not evaluating Shaw for a HAMP loan modification before proceeding with a foreclosure sale of the Property. D. 1 ¶¶ 24-29. Shaw also alleged that BAC had violated the Fair Debt Collection Practices Act ("FDCPA") based on the alleged HAMP violation. D. 1 ¶¶ 30-40. BAC "cancelled or postponed" the foreclosure sale that same day and Shaw withdrew her motion for a temporary restraining order. D. 4.

### B.     Second Foreclosure Attempt

In a letter dated January 12, 2011, BAC notified Shaw that she had been declined under the HAMP program for the reason of "Excessive Forbearance," which was explained with the statement, that "[y]our loan is not eligible for a [HAMP] modification because we are unable to create an affordable payment equal to 31% of your reported monthly gross income without

---

[1] All references cite to Shaw's amended verified complaint, D. 31, unless noted.

[2] "Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

changing the terms of your loan beyond the requirements of the program." D. 31 Exh. C.[3] BAC, through counsel by letter dated June 3, 2011, sent Shaw a notice of intention to foreclose. D. 31 Exh. G. On or around June 18, 2011, BAC foreclosed on the Property and at the sale, Fannie Mae purchased the Property. ¶¶ 12-13. A week later, BAC through counsel reported to Shaw's counsel that the foreclosure had been rescinded. ¶ 14; Pl. Supp. Opp., D. 38 Exh. 2 (email from Shaw's counsel to Shaw dated June 23, 2011 saying that "the bank has stated that they have rescinded the foreclosure"). In January, 2012 Shaw also alleges that "real estate agents" posted "foreclosure notices" at the property.[4] ¶ 14, D. 31 Exh. B.

### C. Procedural History

In September 2011, the Plaintiff elected to proceed *pro se* in this matter. Docket Entry, Sept. 22, 2011. On February 29, 2012, the Court granted Shaw's request to amend her complaint. Docket Entry, Feb. 29, 2012. After Shaw filed her amended verified complaint, BAC moved to dismiss. D. 33. Shaw opposed the motion, D. 36, and later filed a supplemental opposition. D. 38.

In her supplemental opposition, Shaw stated that she had recently found that BAC had foreclosed on the Property by looking at the registry of deeds and finding a recently filed foreclosure deed. D. 38 at 2. Shaw attached this deed as an exhibit to her amended opposition, showing that on June 19, 2012, BAC recorded a foreclosure deed dated June 14, 2012 conveying the "premises" to Fannie Mae. D. 38 Exh. 3 (including copy of Northern Bristol County

---

[3] The Court accepts as true, for the purposes of this motion, the allegation that Shaw was not notified about the HAMP denial until December 2011 (approximately a year later), when BAC notified Shaw's prior counsel by email, and again on February 2012, when Shaw received a copy of the HAMP denial letter at a court hearing in this case. ¶ 24.

[4] In support of this allegation, Shaw cites to a notice by Fannie Mae dated February 3, 2012 stating that "[t]his property is now owned by Fannie Mae." D. 31 Exh. B.

Registry of Deeds, Bk: 20234, Pg: 336).  Shaw asked for leave to amend "to include a request for [l]is [p]endens and a claim for fraud" based on the fact that the foreclosure had occurred when she had been told earlier that it was rescinded.   D. 38 ¶ 1.  The Court heard arguments on the pending motion to dismiss, D. 33, and the request to amend, D. 38, on February 27, 2013 and took the matter under advisement.

**III.   Discussion**

Shaw asserts claims against BAC for breach of contract as a third party beneficiary (Count I), violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k  (Count II), negligence (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), violation of Mass. Gen. L. c. 93A based on predatory lending (Count V), wrongful foreclosure (Count VI), violation of the Real Estate Settlement Procedures Act ("RESPA") (Count VII) and violation of the Truth in Lending Act ("TILA") (Count VIII).  D. 31 ¶¶ 28-69.  She also seeks to add claims for fraud and lis pendens.  D. 38 ¶ 1.

The Court notes that "the fact that [Shaw] filed the complaint pro se militates in favor of a liberal reading" of her allegations, and that "our task is not to decide whether [Shaw] ultimately will prevail but, rather, whether [s]he is entitled to undertake discovery in furtherance of the pleaded claim."  Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  "Our judicial system zealously guards the attempts of pro se litigants on their own behalf.  We are required to construe liberally a pro se complaint and [dismissal is warranted] only if a plaintiff cannot prove any set of facts entitling

him or her to relief." Id. (1st Cir. 1997).  The Court first discusses the claims that survive BAC's motion to dismiss and then addresses the remaining claims.

>   A.  **The Court Denies the Motion to Dismiss as to the Wrongful Foreclosure and Violation of the Fair Debt Collection Practices Act Claims**

>>      *1.  Wrongful Foreclosure (Count VI)*

Shaw has stated sufficient facts to support a plausible claim for wrongful foreclosure. Here, the procedure for foreclosure was by statutory power of sale.[5]  D. 38 Exh. 3 (foreclosure deed executed on June 14, 2012 evincing sale "by the power conferred by [a] mortgage" to Fannie Mae of Property for $446,457.75); Mass. Gen. L. c. 183, § 21 (statutory power of sale); id. c. 244, § 14 (procedure for foreclosure under power of sale).  "[A] mortgage holder can foreclose on a property, as the plaintiffs did here, by exercise of the statutory power of sale, if such a power is granted by the mortgage itself. . . .  [A]fter a mortgagor defaults in the performance of the underlying note, the mortgage holder may sell the property at a public auction and convey the property to the purchaser in fee simple . . . . [But,] 'one who sells under a power [of sale] must follow strictly its terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void.'" U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 646 (2011) (quoting Moore v. Dick, 187 Mass. 207, 211 (1905)).  One "statutory requirement that must be strictly adhered to in a foreclosure by power of sale is the notice requirement articulated in [Mass. Gen. L.] c. 244, § 14."  Id. at 647.

---

[5] In Massachusetts a mortgagee may foreclose "by statutory foreclosure action, by action in equity, by entry and continuation of possession for three years, and by sale under the statutory power of sale in a mortgage.  There is no objection to pursuing concurrently different types of foreclosure. . . .  The first two methods are complicated and time-consuming, and are rarely, if ever, used today.  Foreclosure by entry is accomplished only after three years, but is commonly used in conjunction with a sale under a power of sale, as insurance in case there is some defect in the conduct of a sale."  28 Arthur L. Eno, Jr. William V. Hovey, Michael Pill, and Darren M. Baird, Massachusetts Practice: Real Estate Law § 10.1 (4th ed. 2004 & Supp. 2012).

Shaw has plausibly alleged that a foreclosure auction occurred on June 21, 2011 but was rescinded a week later.[6] ¶¶ 13-14; Pl. Opp., D. 36 at Exh. 1-2 (emails from Shaw's prior counsel to Shaw). Assuming Shaw's allegations are correct, as the Court must at this juncture, no foreclosure sale took place in 2011 that was not immediately nullified, and thus there was no foreclosure at that time. However, Shaw has also plausibly stated that BAC executed a foreclosure deed on June 14, 2012 and "by the power conferred by [a] mortgage" conveyed the Property to Fannie Mae in exchange for $446,457.75, signaling that a foreclosure by sale had occurred. D. 38 at 1-2 & Exh. 3. See Ibanez, 458 Mass. at 654 (noting that "[b]ecause an assignment of a mortgage is a transfer of legal title, it becomes effective with respect to the power of sale only on the transfer; it cannot become effective before the transfer").

Mass. Gen. L. c. 244, § 14 requires that notice of a foreclosure sale be sent via registered mail to the owner or owners of record of the equity of redemption of the property and published in a town newspaper where the mortgaged property lies prior to the date of sale. Shaw sufficiently states that she did not receive notice of the foreclosure until she looked herself at the registry of deeds and the inference is that BAC did not give Shaw the statutorily required notice. D. 38 at 2. Though Shaw characterizes this as grounds to give her leave to amend to assert claims for fraud and "lis pendens," see D. 38 ¶ 1, what Shaw describes is factual support for a claim for wrongful foreclosure; i.e., that a foreclosure occurred in June 2012 of the Property without following the statutorily required notice procedures. See Ahmed, 118 F.3d at 890

---

[6] Shaw's *pro se* amended verified complaint is admittedly inconsistent as to whether she is alleging that a foreclosure has taken place. Compare Am. Ver. Compl., D. 31 ¶ 1 (stating "[m]y home has been foreclosed on") with D. 31 ¶¶ 14-15 (reporting that "the foreclosure was rescinded" and stating that "[n]ow [BAC] seems to be one recording away from foreclosure after they said they had canceled the foreclosure"). The Court finds that the sum of Shaw's allegations are that BAC foreclosed on the Property in June 2011 but within a week of that sale rescinded the foreclosure.

(noting that "if [a *pro se* plaintiff] present[s] sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled").

### 2. *Violation of the Fair Debt Collection Practices Act (Count II)*

Shaw alleges that BAC had violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k by "unfair and unconscionable" practices. D. 31 ¶¶ 48-58. Shaw states that under the FDCPA, BAC is a debt collector and is prohibited from making a "threat to take any action that cannot legally be taken" and "may not use unfair or unconscionable means to collect or attempt to collect any debt." D. 31 ¶¶ 52-56. Shaw alleges that "[BAC] violated the [cited] sections of the FDCPA because it has threatened, and indeed has scheduled, the foreclosure sale of Plaintiff's home, which action is illegal since it would be in violation of [Massachusetts regulation]." D. 31 ¶ 57. Although this allegation is primarily directed toward the alleged failure to consider her for a loan modification, in light of the Court's allowance as to the claim for wrongful foreclosure, the Court cannot conclude that Shaw's alleged facts supporting her claim of wrongful foreclosure may not also entitle her to relief on her FDCPA claim, where the Court notes that Shaw bases her FDCPA claim on an "illegal" foreclosure and where Shaw has stated sufficient factual allegations to allow that claim to go forward. Accordingly, the Court declines to dismiss this claim.

### B.   **Shaw Has Not Plausibly Pled Sufficient Facts to Support Her Other Claims**

Shaw's remaining claims, however, are not supported by plausibly pled facts or are otherwise defective and the Court dismisses them.

### 1. *Breach of Contract as a Third Party Beneficiary (Count I)*

In her original complaint filed while she was still represented by counsel, Shaw alleged that she has a breach of contract claim against BAC because it failed to follow HAMP program

guidelines as required under its mortgage servicing contract with Fannie Mae. D. 31 ¶¶ 41-42. Specifically, those guidelines allegedly required that the then-imminent "foreclosure must be suspended while a borrower is under consideration for HAMP, and may not occur unless a borrower has first [been] evaluated and denied for HAMP." D. 1. ¶ 25. She repeats the allegation in her first amended verified complaint. D. 31 ¶ 42. Judges in this district have held that borrowers are not intended third party beneficiaries of mortgage servicing contracts between servicers and federal agencies. See, e.g., Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 179-84 (D. Mass. 2011) (holding that borrowers do not have third party beneficiary status to enforce HAMP agreements between servicers and federal government, and collecting cases in accord). Accordingly, Shaw's allegations even assuming them to be true for the purposes of this motion, do not rise to the level of stating a plausible breach of contract claim. Accordingly, the Court dismisses this claim.

### 2. *Negligence (Count III)*

In support of her negligence claim, Shaw alleges that BAC has not provided her "the figures used [to conclude] that she is not eligible" for a loan modification, denying her the opportunity to verify the "accuracy" of BAC's decision not to modify her loan. ¶ 60. She further alleges that BAC auctioned her property before finishing the review for HAMP and other loss mitigation efforts under HAMP. ¶ 61. Under Massachusetts law, the plaintiff must show four elements to sustain a claim for negligence: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). "HAMP . . . does not create an independent duty for mortgagors where no other basis for that duty exists." Seidel v. Wells Fargo Bank, No. 12–10766–RWZ, 2012 WL 2571200, at *4 (D. Mass. July 3, 2012) (collecting

cases). Moreover, the mere relationship between mortgage holder or servicer and borrower does not give rise to a fiduciary duty to the latter. See Corcoran v. Saxon Mortg. Servs., No. 09-11468-NMG, 2010 WL 2106179, at *1, 3 (D. Mass. May 24, 2010). Shaw's claim must fail where she does not plausibly allege facts to support a negligence claim that BAC owed a duty to Shaw to provide her with the information that she alleges she did not receive regarding the loan modification and foreclosure. The Court dismisses this claim for negligence.

          *3.     Breach of Covenant of Good Faith and Fair Dealing (Count IV)*

Shaw alleges a count entitled "Good Faith and Fair Dealing Mass Gen. Laws ch. 244."[7] The Court interprets this allegation as an assertion that BAC breached the covenant of good faith and fair dealing that is "is implied in every contract." Uno Rests., Inc. v. Bos. Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed

---

[7] To the extent that Shaw was referencing Mass. Gen. L. c. 244 (Foreclosure and Redemption of Mortgages), the Court recognizes that "[t]he basic rule of law applicable to the foreclosure of real estate mortgages is that 'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" McBride v. Am. Home Mortg. Servicing Inc., No, 11-10998-RWZ, 2012 WL 931247, at *2 (D. Mass. Mar. 19, 2012) (quoting Seppala & Aho Const. Co., Inc. v. Petersen, 373 Mass. 316, 320 (1977)). But even after applying a liberal reading to Shaw's complaint and her filings in opposition to BAC's motion to dismiss, the Court finds that Shaw's claim of breach of good faith and fair dealing is limited to her allegations relating to BAC's refusal to modify her loan. On that characterization of her claim, Shaw "cannot prove any set of facts entitling . . . her to relief." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). In this way, her claim as to good faith and fair dealing differs from her claim as to violation of the FDCPA, which is based on "illegal" foreclosure. D. 31 ¶ 57. However, noting that the Court will allow Shaw to amend her complaint to allege a claim for fraud, see discussion infra, Shaw has an opportunity also to amend her complaint to allege sufficient facts to support the claim that "the process used in the foreclosure proceeding was inequitable," McBride, 2012 WL 931247, at *2, which if plausibly alleged would make out a claim for breach of the obligation of good faith and reasonable diligence as it relates to BAC's exercise of the power of sale in her mortgage contract. See, e.g., Teixeira v. Fed. Nat. Mortg. Ass'n, No. 10-11649-GAO, 2011 WL 3101811, at *1-2 (D. Mass. July 18, 2011).

expectations of the parties in their performance." Id. Here, Shaw states that BAC foreclosed on her property without giving her an opportunity to establish whether the figures used in the HAMP evaluation of her property were accurate and before seeking alternatives to foreclosure. ¶ 63. Where Shaw does not allege that BAC was obligated under any contract to consider her for a loan modification, Shaw has not plausibly alleged that BAC has violated this implied covenant. Markle, 844 F. Supp. 2d at 183-84 (holding that "[b]ecause plaintiffs are neither parties to [a contract] nor intended beneficiaries of [one], defendant owes them no duty under the implied covenant"); Seidel, 2012 WL 2571200, at *3; Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705, at *3 (D. Mass. Nov. 29, 2012). The Court dismisses this claim.

### 4. *Violation of Mass. Gen. L. c. 93A (Count V)*

Shaw alleges that BAC violated Mass. Gen. L. c. 93A based on predatory lending, alleging that "[s]omeone somewhere had to lie about my income [to receive the loan] and it was not me" and that "[g]iving a loan that the defendant knew or should have known the plaintiff would not be able to pay back . . . [is a] 93A violation[]." D. 31 ¶¶ 19, 65-66. As BAC observes, D. 34 at 12, Shaw does not allege that she has met the procedural requirements necessary to bring a 93A claim, and specifically did not allege that she sent "[a]t least thirty days prior to the filing of any [action under Mass. Gen. L. c. 93A, § 9], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. L. c. 93A, § 9(3). This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" Rodi v. S. New Eng. Sch. of Law, 389 F. 3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975)). However, "failure to allege compliance with the statutory notice requirement is not necessarily a death knell for a Chapter 93A claim. Massachusetts courts typically have

allowed plaintiffs to amend in order to cure this kind of modest pleading defect [and] [f]ederal practice is no less permissive." Rodi, 389 F.3d at 20.

Here, BAC does not allege that Shaw failed to send any 93A letter, and indeed BAC provides the June 11, 2010 demand letter that it received. D. 34 Exh. C. Even assuming *arguendo* that the June 11, 2010 demand letter was timely, BAC argues that the letter failed to satisfy the requirement that the letter "reasonably describ[e] the unfair or deceptive act or practice . . . and the injury suffered," as required by Mass. Gen. L. c. 93A § 9(3). D. 34 at 12-13. BAC points out that Shaw's letter requested consideration for a loan modification under HAMP before BAC conducted a foreclosure sale. D. 34 at 13-14; D. 34 Exh. C at 2. Consistent with that goal, Shaw's letter cites several HAMP directives related to the bank's alleged obligation to conduct loan modifications before foreclosing and ends with this paragraph: "Please note that failure to comply with the federal HAMP program constitutes an unfair or deceptive trade practice in violation of the Massachusetts Consumer Protection Act. M.G.L. c. 93A. This letter constitutes a demand under the Act for a reasonable offer of settlement, and requires a response within 30 days of receipt." BAC is correct that the "unfair or deceptive act or practice" reasonably described is limited to the "failure to comply with the federal HAMP program," and specifically that "BAC [was] required to consider [Shaw] for a loan modification under [HAMP]." D. 34 Exh. C at 2.

The purposes behind a demand letter are "'to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct . . . [and] to operate as a control on the amount of damages which the complainant can ultimately recover if he proves his case.' There can, clearly, be no opportunity to settle a claim if that claim is not mentioned in the demand letter." Da Silva v. U.S. Bank, N.A., --- F. Supp. 2d ----, No. 11-

11416-JLT, 2012 WL 3329722, at *3 (D. Mass. Aug. 8, 2012) (quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975)). BAC raised this issue in its motion to dismiss, noting that action under 93A would be inappropriate where the demand letter does not mention any allegation of predatory lending. D. 34 at 13-14. Shaw neither addresses this deficiency in either her opposition to her motion to dismiss, D. 36, or in her supplemental opposition to her motion to dismiss, D. 38 nor has she sought leave to amend this claim in her request to amend the operative complaint. Accordingly, the Court dismisses this claim.

### 5. *Violation of Real Estate Settlement Procedures Act (RESPA) (Count VII)*

Shaw alleges that BAC violated RESPA, and her claim states in its entirety that "[BAC] has also violated RESPA. Giving or accepting fees, kickbacks and/or things of value in exchange for, referrals of settlement service business, and splitting fees and receiving unearned fees for services not actually performed [sic]." D. 31 ¶ 68. Shaw then cites, without explanation, to an exhibit that is a copy of a check made out to her from "Alston v. Countrywide Financial Corp. PMI Settlement Fund," in the amount of $126.05. D. 31 Exh. J. Plaintiff does not allege how this exhibit supports her allegation that BAC has violated any portion of the RESPA statute.

As BAC observes, Shaw's allegation appears to recite the statutory language that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service," and that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service." 12 U.S.C. § 2607(a)-(b). This is a situation warranting dismissal described by Ahmed, 118 F. 3d at 890, where "formal elements of the claim [are] stated without the requisite supporting facts." Shaw's statement is at best a conclusory allegation that is insufficient to state

a cognizable claim for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 & n.3 (2007) (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and requiring "a 'showing,' rather than a blanket assertion, of entitlement to relief"). Even after having notice of the deficiency through BAC's motion to dismiss, Shaw does not address the deficiency (or the RESPA claim at all) in her opposition to her motion to dismiss, D. 36, or in her supplemental opposition to her motion to dismiss and request to amend, D. 38. The Court dismisses this claim.

      6.    *Violation of the Truth in Lending Act (TILA) (Count VIII)*

Shaw alleged that BAC violated TILA, and her complete allegation is that "[BAC] fail[ed] to clearly and accurately disclose the number, amounts and timing of payments scheduled to repay the obligation. The mortgage broker told me my payments would be $2800 and the mortgage insurance would come of [sic] after a year. Both were untrue." ¶ 69. It is correct that to accomplish the goal of "'assur[ing] a meaningful disclosure of credit terms' and 'protect[ing] the consumer against inaccurate and unfair credit . . . practices,' . . . . TILA requires creditors to disclose, clearly and accurately, all the material terms of consumer credit transactions." McKenna v. First Horizon Home Loan Corp., 475 F.3d 421 (1st Cir. 2007) (quoting 15 U.S.C. § 1601(a)). However, Shaw does not state how these actions violated TILA, what provisions of TILA she is alleging were violated and does not allege sufficient facts that BAC is the party responsible for any cognizable violation. Moreover, the amended pleading does not address whether BAC is a creditor which is a necessary predicate to her claim since while a servicer of a loan has the obligation to provide certain information to borrowers under the Act, "liability for violations of TILA rests squarely and solely with creditors." Ording v. BAC Home Loans Servicing LP, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. January

10, 2011) (dismissing TILA claim where defendant was servicer of mortgages and not a creditor). Shaw does not address the deficiency (or the TILA claim at all) in her opposition to her motion to dismiss, D. 36, or in her supplemental opposition to her motion to dismiss, D. 38, nor seeks to amend this claim in her request to amend. The Court dismisses this claim.

### C. The Court Grants Shaw's Request to Amend Her Complaint as to Fraud and Denies Her Request for a Claim for Lis Pendens Where Shaw Can Seek That Remedy By Motion

In her supplemental memorandum in support of her opposition to BAC's motion to dismiss, Shaw requests that her pleadings be amended to include a "request for [l]is [p]endens and a claim of [f]raud" in light of her recent discovery "that the foreclosure on her property was conducted and recorded" because she had previously been told that the foreclosure was rescinded. D. 38 at 1-2.

#### 1. *Lis Pendens*

Lis pendens means 'pending suit' and is a recorded filing in the registry of deeds that serves to put persons on notice that litigation is pending concerning a parcel of land. Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560 (1981). See generally 28 Arthur L. Eno, Jr. William V. Hovey, Michael Pill & Darren M. Baird, Massachusetts Practice: Real Estate Law § 11.20 (4th ed. 2004 & Supp. 2012). A memorandum of lis pendens is not a cause of action, but is akin to a interlocutory decree that can be sought by motion. See Mass. Gen. L. c. 184, § 15 ("Any party seeking a memorandum of lis pendens . . . shall commence the underlying proceeding by means of a verified complaint . . . and shall name as defendants all owners of record and any party in occupation under a written lease. Upon motion of a party, . . . a justice of the court in which the action is pending shall make a finding . . ."). The Court construes Shaw's "request for lis pendens," D. 38 at 11, as seeking leave to file a motion for lis pendens. D. 38 at

11. See Castro v. U.S., 540 U.S. 375, 381 (2003) (observing that "[f]ederal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category"). Leave of this Court is not required, but Shaw is allowed to file a motion for this Court's consideration if she wishes to do so.

### 2. Fraud

Leave to amend, which should be given "freely" when justice so requires, is appropriate here where Shaw alleges that the facts giving rise to a plausible claim for fraud have changed since she filed her amended complaint. Fed. R. Civ. P. 15 (a)(2). The Court notes, of course, that allowing Shaw leave to amend does not relieve her of the heightened pleading requirements necessary to allege a claim for fraud. See, e.g., Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705, at *5 (D. Mass. Nov. 29, 2012) (dismissing claim for fraud where heightened pleading standard was not met); see also Juárez v. Select Portfolio Servicing, Inc., --- F.3d ----, 2013 WL 500868, at *8 (1st Cir. Feb. 12, 2013).

## IV. Conclusion

For the above reasons, BAC's motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED as to Shaw's count of wrongful foreclosure and the FDCPA, and GRANTED as to her remaining claims. Shaw's request to amend her complaint to state a claim for fraud is GRANTED. Shaw is ALLOWED to bring a motion for lis pendens where Shaw does not need leave of the Court to bring a motion for same. Shaw will have 21 days from the date of this order to file her second amended complaint consistent with this Order.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge