# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
SUSAN A. SHAW,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )          Civil No. 10-cv-11021
                                        )
                                        )
BANK OF AMERICA, NA,                    )
                                        )
          Defendant.                    )
                                        )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                              **January 15, 2015**

## I.    Introduction

Susan A. Shaw ("Shaw") brings this action against defendant Bank of America, NA ("BOA"), successor to BAC Home Loans Servicing, LP ("BAC"). Shaw challenges actions leading to the foreclosure of her residence. Third Am. Ver. Compl., D. 67. BOA has moved for summary judgment pursuant to Fed. R. Civ. P. 56. D. 75. For the reasons stated below, BOA's motion is ALLOWED.

## II.    Governing Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008) (quoting Sánchez v.

<u>Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996)). The party seeking summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must produce specific facts "sufficient to deflect the swing of the summary judgment scythe." <u>Mulvihill v. Top-Flite Golf Co.</u>, 335 F.3d 15, 19 (1st Cir. 2003). The Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). The non-moving party, however, cannot simply rely on conclusory allegations and improbable inferences. <u>Ahern v. Shinseki</u>, 629 F.3d 49, 54 (1st Cir. 2010).

At the outset, the Court notes that even though Shaw is *pro se*, she must comply with the Federal Rules of Civil Procedure. The Court is required to construe liberally a *pro se* litigant's pleadings, but the Court may not rewrite deficient pleadings to sustain an action. <u>Thompson v. Worcester County</u>, No. 10-40126-FDS, 2011 WL 4829972, at *2 (D. Mass. Oct. 11, 2011).

This action was filed in 2010 and the Court has allowed Shaw to amend her complaint three times. Docket entry 2/29/12; D. 41; D. 64. After a course of discovery, Shaw appears to rely on a corpus of documentary evidence attached to her third amended verified complaint and in connection to her opposition to this motion. Some of these documents, however, are inadmissible as hearsay or not relevant to Shaw's asserted claims and thus may not be considered in opposition to summary judgment. <u>Friends of Merrymeeting Bay v. Hydro Kennebec, LLC</u>, 759 F.3d 30, 34 (1st Cir. 2014); <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990). Moreover, Local Rule 56.1 requires

Shaw, as the party opposing the summary judgment motion, to "include a concise statement of material facts of record as to which it is contended there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Here, Shaw did not submit a statement detailing which facts are disputed and, therefore, the Court may consider BOA's statement of material facts as undisputed for purposes of this motion. Swallow v. Fetzer Vineyards, 46 Fed. Appx. 636, 638 (1st Cir. 2002). Even in the absence of such Local Rule 56.1 statement, and viewing the entirety of the record in the light most favorable to Shaw, summary judgment in BOA's favor is warranted.

### III.     Relevant Facts

Shaw owns a home located at 12 Jarvis Lane in North Attleboro, Massachusetts (the "Property"). Def.'s Statement of Material Facts, D. 77 ¶ 1. On August 15, 2006, Shaw refinanced an existing mortgage on the Property, executing a note (the "Note") in the amount of $400,000 in favor of America's Wholesale Lender. Id. ¶ 16. Shaw also executed a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). Id. ¶ 17. Countrywide Home Loans, Inc. ("Countrywide") was the servicer of the Note and Mortgage. Id. ¶ 18. In 2007, Shaw stopped making monthly payments on the Note and the Mortgage. Id. ¶ 19. In a letter dated August 16, 2007, Countrywide informed Shaw that her loan was in default. D. 77-3 at 39. In June 2008, Countrywide notified Shaw that it intended to foreclose and initiated foreclosure

proceedings. D. 77 ¶¶ 20-21; D. 77-3 at 42. In July 2008, Countrywide became BAC Home Loan Servicing, L.P. ("BAC"), the predecessor entity of BOA.[1]

The foreclosure sale initially set for April 16, 2009 was postponed three times. D. 77 ¶¶ 25-26. During that time, Shaw applied for and was granted a modification of her Note and Mortgage. Id. ¶ 27. Shaw received a loan modification agreement dated July 14, 2009, but declined to sign it because the proposed new payment was nearly the same as her payment at the time. Id.; D. 77-3 at 45-48; D. 84 at 9-10; D. 84-3. On August 14, 2009, Shaw sought bankruptcy protection resulting in the cancellation of the foreclosure sale scheduled for August 17, 2009. D. 77 ¶¶ 28-29. On December 15, 2009, Shaw received a Chapter 7 discharge and her bankruptcy case closed shortly thereafter. Id. ¶ 30.

On November 8, 2009, MERS assigned its interest in the Mortgage to BAC, the predecessor entity of BOA. Id. ¶ 31. On May 24, 2010, BAC, through its attorneys, notified Shaw of its intent to foreclose and set a sale date of June 18, 2010. Id. ¶ 32; D. 77-4 Exh. C-8. On June 17, 2010, Shaw filed her initial complaint in this action against BAC and an *ex parte* motion for a temporary restraining order against the sale. D. 1, 2. Shaw withdrew the injunctive motion because BOA agreed to postpone the foreclosure while she sought a modification to her loan under the Home Affordable Modification Program ("HAMP"). D. 77 ¶¶ 33, 37; D. 4.

---

[1] BOA's Statement of Material Facts indicates that Bank of America Corporation "merged with" Countrywide in July of 2008 and "changed its name" to BAC Home Loan Servicing, L.P. D. 77 ¶ 22. The affidavit submitted in support of BOA's motion for summary judgment, however, states that Bank of America Corporation "acquired" Countrywide. D. 77-3 ¶ 12.

On January 12, 2011, BOA notified Shaw that the modification she sought under HAMP was declined. D. 77-3 at 51. The reason Shaw was not eligible for a HAMP modification was "excessive forbearance" (i.e., meaning that, to arrive at an affordable payment for Shaw, the mortgagee would have been required to delay collecting too large a portion of the principal). Id. Shaw then applied for a traditional in-house loan modification. D. 77 ¶ 38. Shaw's request was denied because her debt-to-income ratio exceeded 107%. Id. ¶ 39; D. 84-4.

BOA again initiated foreclosure proceedings. D. 77 ¶ 40. On June 3, 2011, BOA's attorneys notified Shaw, her bankruptcy attorney and the attorney then representing her in this lawsuit of BOA's intention to foreclose and indicated a sale date of June 17, 2011. D. 77-4 Exh. C-10. On June 17, 2011, BOA sold the Property to itself and assigned its bid to the Federal National Mortgage Association ("Fannie Mae"). D. 77 ¶ 43, D. 77-3 ¶ 19.

Within hours of the foreclosure sale, Shaw's attorney at the time contacted her stating in part, "As I stated before, the bank's attorney informed me that they would be postponing the sale. I spoke to her today and she was surprised that the sale had gone through. She is going to contact the bank to find out what happened." D. 84-5. Six days later, on June 23, 2011, the attorney contacted Shaw again, stating that "the bank has stated that they have rescinded the foreclosure, so that is taken care of."[2] D. 84-6.

BOA acknowledges that Shaw sought a rescission following the foreclosure sale. The affidavit submitted by BOA in support of its motion states that "Bank of America

<hr />

[2] BOA's Statement of Material Facts does not reference either of these e-mails. They are attached as exhibits to both the Third Am. Ver. Compl., D. 67 Exhs. H & J, and to Shaw's opposition to the summary judgment motion. D. 84-5; D. 84-6.

reached out to Fannie Mae regarding the request to rescind the sale. This request was denied." D. 77-3 ¶ 21.

On June 14, 2012, BOA executed an assignment of its rights to Fannie Mae. D. 77 ¶ 49. The same day, BOA executed and recorded a foreclosure deed. Id.

## IV.    Procedural History

BOA moved to dismiss Shaw's initial complaint in July 2011. D. 22. In August 2011, Shaw's counsel withdrew and she has been litigating this case *pro se* since that time. D. 27. The Court denied BOA's motion without prejudice and gave Shaw leave to amend her complaint. D. 30. She filed her first amended complaint on April 2, 2012. BOA moved to dismiss the amended pleading for failure to state a claim, D. 33, which this Court allowed in part and denied in part. D. 41. The Court granted leave to Shaw to file her second amended complaint, which she did on March 22, 2013. D. 41; D. 44. BOA again moved to dismiss for failure to state a claim. D. 49. The Court dismissed Shaw's Chapter 93A claim and granted her leave to amend other claims. D. 64.

Shaw filed her third amended, verified complaint on January 27, 2014. D. 67. She asserts four causes of action. Count I is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(5) and § 1692f. Id. Count II asserts that BOA breached its obligation of good faith and fair dealing. Id. Count III is for fraud, and Count V is for wrongful foreclosure.[3] Id.

BOA now moves for summary judgment. D. 75. The Court held a hearing on the pending motion and took the matter under advisement. D. 85.

---

[3] There is no Count IV in Shaw's Third Am. Ver. Compl. D. 67.

## V.     Discussion

### A.     Count I:  Violations of the FDCPA

Shaw alleges that BOA threatened to take illegal action and used unfair or unconscionable means to attempt to collect a debt in violation of the FDCPA.  D. 67 ¶¶ 45-46.  The bases for these allegations are:  (1) BOA allegedly foreclosed on the Property, rescinded the foreclosure, then foreclosed a second time without the notice required by Mass. Gen. L. c. 244, § 14 and HAMP; and (2) BOA allegedly failed to provide the "NPV [net present value] inputs" used to deny Shaw's application for a HAMP modification.  Id. ¶¶ 47-48.

BOA argues that it is not a debt collector as defined by the FDCPA.  In addition, BOA asserts that the FDCPA does not apply to servicers or mortgage holders pursuing *in rem* remedies.  D. 76 at 18-21.

Shaw claims BOA violated two provisions of the FDCPA:  Section 1692e(5) and 1692f.  The former provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including a "threat to take action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  The latter provision states, in relevant part, that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" including "taking or threatening to take any nonjudicial action to effect dispossession . . . of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."  15 U.S.C. § 1692f(6)(A).

Section 1692a(6) of the FDCPA defines, in relevant part, a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business

the principal purpose of which is the collection of any debts . . . ." 15 U.S.C. § 1692a(6).

That section further provides that "[f]or the purpose of section 1692f(6) of this title, such

term also includes any person who uses any instrumentality of interstate commerce or the

mails in any business the principal purpose of which is the enforcement of security

interests." Id. Because BOA seeks to enforce a security interest, it is a "debt collector"

for purposes of Section 1692f(6).

As stated above, Section 1692f(6) prohibits non-judicial action to effect the

dispossession of property claimed as collateral if there is no right to possess that property.

Here, BOA had a right to possess the Property at issue and, therefore, its non-judicial

action, i.e., the foreclosure sale, was not in violation of the FDCPA. "A court should

look to state law requirements to determine whether there was a present right to

possession under the FDCPA." Speleos v. BAC Home Loan Servicing, L.P., 824 F.

Supp. 2d, 226, 233 (D. Mass. 2011) (quoting Revering v. Norwest Bank Minn., N.A., No.

99-480/RHK/JMM, 1999 WL 33911360, at * 5 (D. Minn. Nov. 30, 1999)). The

requirements for foreclosure are set forth in Mass. Gen. L. c. 244. As discussed below

with respect to Shaw's wrongful foreclosure claim, the record shows that BOA complied

with the statutory requirements.

Shaw claims that BOA did not have a present right of possession because it

allegedly postponed and then rescinded the foreclosure sale. To support this assertion,

Shaw relies on two communications from her attorney. The first e-mail states that "the

bank's attorney informed me that they would be postponing the sale." D. 84-5. In the

second email, Shaw's attorney wrote that "the bank has stated that they have rescinded

the foreclosure . . . ." D. 84-6. Both statements by the attorney about the statements by

counsel for the bank are hearsay statements and inadmissible at trial. In evaluating a summary judgment motion, the Court's review of the record is limited to evidence that "would be admissible or usable at trial." Merrymeeting Bay, 759 F.3d at 34 (quoting Asociacion de Periodistas de Puerto Rico v. Mueller, 680 F.3d 70, 78 (1st Cir. 2012)); Garside, 895 F.2d at 50 (stating that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment"). Shaw does not direct the Court to any specific, admissible evidence to support her contention that BOA postponed and then rescinded the foreclosure sale. Moreover, once Shaw defaulted and BOA provided statutory notice pursuant to Mass. Gen. L. c. 244, § 14, BOA had a right to foreclose. Because BOA had the right to possess the Property in which it held a security interest, BOA did not violate the FDCPA. The Court, therefore, will allow BOA's motion for summary judgment as to alleged violation of Section 1692f(6) of the FDCPA.

Turning to Shaw's claim under Section 1692e(5), the threshold question is whether BOA is a "debt collector" under that provision. Generally, foreclosing on a security interest is not debt collection activity for purposes of § 1692e and, therefore, one who forecloses on property is not a debt collector under the FDCPA. Warren v. Countrywide Home Loans, Inc., 342 Fed. Appx. 458, 460 (11th Cir. 2009) (noting that "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6), which reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act"). "[S]everal courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA except

for the provisions of section 1692f(6)." Id. (internal quotation marks and alternations omitted) and cases cited.

There is an important exception to this rule:  a mortgage servicer is a debt collector under the FDCPA if it begins servicing a loan that is already in default. Kee v. R-G Crown Bank, 656 F. Supp. 2d 1348, 1355 (D. Utah 2009) (stating that a loan servicer is a debt collector within the meaning of FDCPA if it acquires the loan after it is in default); cf. Brumberger v. Sallie Mae Servicing Corp. 84 Fed. Appx. 458, 459 (5th Cir. 2004) (affirming dismissal of FDCPA claim where plaintiff failed to allege he was in default when servicer began servicing his loans); Brewer v. Bank of Am., No. 6:12-cv-1633-Orl-37GJK, 2013 WL 980281, at * 3  (M.D. Fla. Mar. 13, 2013) (stating that unless a plaintiff was in default at the time a defendant became the loan servicer, then the defendant is not a debt collector); Bentley v. Bank of America, N.A., 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (stating that a mortgage servicing company is not a debt collector under the FDCPA as long as the debt was not in default at the time it was acquired).  The legislative history confirms Congress's intent to exclude mortgage servicing companies from the definition of "debt collector" unless the debts they service were in default at the time they acquired them.  "[T]he committee does not intend the definition to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing . . . ."[4] S. Rep. 95-382, 1977 WL 16047, at * 3-4 (1977).

---

[4] BOA relies on Speleos, 824 F. Supp. 2d at 232 to argue that the FDCPA does not apply to *in rem* remedies such as foreclosure.  The Speleos court held that the enforcement of a security interest was not the collection of a debt because Section 1692f(6) expressly applies to an entity enforcing a security interest, implying that the rest of the FDCPA does not.  Id. at 232.  While Speleos reflects the general rule that mortgage servicers and

BOA asserts that Countrywide began servicing Shaw's loan when it was made in 2006, well before she defaulted in 2007. D. 76 at 18. According to BOA, Countrywide merely "changed its name" to BAC in July of 2008, after Shaw defaulted. Id. BOA's own affidavit, however, states that Bank of America Corporation "acquired" Countrywide and then changed its name to BAC. D. 77-3 at ¶ 12. Reviewing the record in the light most favorable to the non-movant, the inference the Court draws from the affidavit is that BAC began servicing Shaw's loan after it was in default, which would mean that BOA is a debt collector under the FDCPA for purposes of §1692e(5).

The analysis, however, does not stop there. The purpose of a "debt collector" is to collect a "debt," a term also defined by the FDCPA. A "debt" is "any obligation or alleged obligation of a consumer *to pay money* arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5) (emphasis added). Here, pursuant to Shaw's Chapter 7 bankruptcy discharge, she is not liable for any deficiency between the price secured at foreclosure and the amount owed on the Mortgage. See D. 77 at ¶ 30; 76 at 16; 11 U.S.C. § 727. Indeed, the notice of the sale sent to Shaw states that "[i]f you are currently in bankruptcy or have received a discharge in bankruptcy as to this obligation, this notice is intended for information purposes only and is not an attempt to collect a debt . . . ." D. 77-4, Exh. C-10. Because BOA through the foreclosure did not seek to collect a "debt" as defined by the FDCPA, the Court holds that its alleged conduct does not fall under Section 1692e as a matter of law. See Arruda v. Sears, Roebuck & Co. et al., 310 F.3d 13, 23 (1st Cir. 2002) (stating

holders are not "debt collectors," the court in Speleos, however, did not address the applicability of the exception for the collection of notes in default.

that "[t]he FDCPA's definition of a debt is broad, but it requires at least the existence or alleged existence of an obligation to pay money" and that it would "contradict the plain language" of the statute if a discharged debt satisfied the requirements of the FCDPA); Redjai v. Nationstar Mortgage LLC, No. SACV 14-01626, 2014 WL 7238355, at * 3 n.1 (C.D. Cal. Dec. 15, 2014) (noting that letter alone would not support FDCPA violation where letter stated that if plaintiff was in bankruptcy or had received a discharge in bankruptcy, the letter was not attempt to collect a debt). For all of the aforementioned reasons, the Court allows BOA's summary judgment motion as to Count I.

### B.    Count II:  Breach of Good Faith and Fair Dealing

Shaw alleges that BOA breached its obligation of good faith and fair dealing by foreclosing on the Property "before finishing the HAMP process" and without the notice required by Mass. Gen. L. c. 244, § 14.  D. 67 ¶¶ 51, 54.  Specifically, Shaw alleges she was denied the opportunity "to establish whether the figures used in the evaluation were accurate" and to "seek[] alternatives to foreclosure."  Id. ¶ 52.  Shaw avers that BOA violated HAMP guidelines by not allowing her to dispute NPV inputs allegedly used to deny her HAMP modification request.  Id. ¶¶ 57-58.  Shaw's allegation also implies that she was entitled to participate in the Home Affordable Foreclosure Alternatives Program ("HAFA").[5]  Id. at ¶ 52.  Finally, BOA purportedly violated unspecified laws by allegedly foreclosing when it agreed to postpone the foreclosure sale, then rescinding the foreclosure sale, then recording the foreclosure deed without notice.  Id. ¶ 55.

BOA argues that it did not violate the duty of good faith and reasonable diligence because it was not required to consider a loan modification prior to foreclosure.  D. 76 at

---

[5] HAFA is part of HAMP.  Bean v. Bank of New York Mellon, No. 12-cv-10930-JCB, 2012 WL 4103913, at *7 n. 14 (D. Mass. September 18, 2012).

10. In addition, BOA asserts that it secured the best price at the foreclosure sale. Id. at 11. BOA further argues that it did not violate HAMP, and, in any event, a HAMP violation does not equate to a violation of good faith and reasonable diligence. Id. at 12-13.

"Under Massachusetts law, 'a mortgagee in exercising the power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'"[6] Figueroa v. Fed. Nat'l Mortgage Ass'n., No. 12-11290-RWZ, 2013 WL 2244348, at * 3 (D. Mass. May 20, 2013) (quoting West Roxbury Co-op Bank v. Bowser, 324 Mass. 489, 492 (1949)). This duty is satisfied if a mortgagor complies with the statutory foreclosure requirements, "unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." Id. (quoting Pemstein v. Stimpson, 36 Mass. App. Ct. 283, 286 (1994)). "The mortgagee's duty is more exacting when it becomes the buyer of the property, where 'he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal.'" Ryan v. Mez, LLC, No. 06-0463-B, 2008 WL 2415177, at *2 (Mass. Super. June 9, 2008) (quoting Union Mkt. Nat'l Bank of Watertown v. Derderian, 318 Mass. 578, 582 (1945)).

Much of Shaw's claim that BOA breached its obligation of good faith and fair dealing focuses on BOA's alleged violation of HAMP guidelines. HAMP is a government-sponsored program created as a result of the Economic Stabilization Act of

---

[6] A mortgagee's duty of good faith and reasonable diligence in conducting the foreclosure sale is not to be confused with the contractual duty of good faith and fair dealing that is implied in every contract. The former is an independent duty that applies only to mortgagees exercising a power of sale. Teixeira v. Fed. Nat'l Mortgage Ass'n, No. 10-11649-GAO, 2011 WL 3101811, at * 2 (D. Mass. July 18, 2011).

2008 and aimed at making homes affordable.  Teixeira, 2011 WL 3101811, at * 1; 12 U.S.C. § 5220.  HAMP provides financial incentives to participating mortgage lenders that modify the loans of borrowers who are at risk of foreclosure.  Teixeira, 2011 WL 3101811, at * 1.  To participate in HAMP, mortgage lenders must execute a Service Participation Agreement ("SPA") with Fannie Mae.  Id.  The SPA requires mortgage lenders to offer loan modifications and foreclosure prevention services pursuant to HAMP guidelines.  MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 489 (1st Cir. 2013).  It also requires servicers to abide by enumerated requirements set forth in HAMP guidelines when evaluating mortgage modifications pursuant to HAMP.  Teixeira, 2011 WL 3101811, at * 1.

Shaw's theory relies upon her status as a third-party beneficiary of the SPA.  The First Circuit, however, has held that borrowers are not third-party beneficiaries of the SPA, which is an agreement between a mortgage lender and the government. MacKenzie, 738 F.3d at 491-92.  Thus, even assuming *arguendo* that BOA did violate HAMP guidelines, Shaw does not have standing to enforce the terms of the SPA because she is not a party to that agreement.  Moreover, HAMP does not provide a private cause of action.  See Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 U.S. Dist. LEXIS 170357, at * 10 (D. Mass. Nov. 29, 2012) (noting that "there is no private right of action under HAMP"); McBride v. Am. Home Mortgage Servicing, Inc., No. 11-10998-RWZ, 2012 WL 931247, at * 3 (D. Mass. Mar. 19, 2012)  (same).  To the extent that Shaw's claim for breach of the obligation of good faith and fair dealing relies on alleged violations of HAMP and HAFA requirements, it is barred as a matter of law.

The remaining bases for Shaw's claim for breach of the obligation of good faith and fair dealing are lack of statutorily required notice and the postponement and rescission of the foreclosure sale. The unrebutted record before the Court indicates that BOA provided notice as required by Mass. Gen. L. c. 244, § 14. <u>See</u> *infra* § V.D. The Court, therefore, allows BOA's motion for summary judgment as to Count II.

### C.     <u>Count III:  Fraud</u>

In support of her fraud claim, Shaw relies upon BOA's allegedly false representation that it rescinded the foreclosure. D. 67 ¶¶ 60-61. Shaw alleges that BOA made this misrepresentation "with the intention to deceive and to induce me to act in reliance on that representation." <u>Id.</u> ¶ 60. Shaw further asserts that the purpose of the misrepresentation "was to mislead me into not protecting myself concerning the foreclosure." <u>Id.</u> ¶ 62. Shaw claims that she could have "taken steps to prevent the [loss] of my home if [BOA] had not misinformed me about rescinding the foreclosure."[7] <u>Id.</u> ¶ 65.

BOA makes two arguments with respect to the fraud count. First, BOA contends that Shaw's claim is barred by the statute of frauds. According to BOA, without a writing reflecting an agreement, there was no binding promise to rescind the foreclosure. D. 76 at 15. Second, BOA argues that Shaw did not act upon any representation to her detriment. <u>Id.</u> Instead, Shaw continued to occupy the Property without paying the Mortgage. <u>Id.</u>

---

[7] Shaw's opposition to BOA's summary judgment motion attempts to assert an additional basis for fraud, namely that BOA fraudulently inflated the appraisal of her property. D. 84 at 5. Shaw is barred from adding claims at this stage of the proceedings, and thus the Court does not address these allegations.

To sustain an action for fraud, Shaw must show that (1) BOA made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing Shaw to act in reliance thereon, (4) Shaw relied upon the representation, and (5) Shaw acted to her detriment. Armstrong v. Rohm and Haas Co., Inc., 349 F. Supp. 2d 71, 81 (D. Mass. 2004). The required alleged false representation of material fact, the first element of fraud, is that BOA rescinded the foreclosure following the sale.

The statute of frauds provides that "[n]o action shall be brought . . . [u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." Mass. Gen. L. c. 259, § 1. Here, the alleged rescission is within the ambit of the statute of frauds because it pertains to an interest in land. See Scott v. Bank of Am., N.A., No. 14-20477, 2014 WL 7389910, at * 2 (5th Cir. Dec. 30, 2014) (holding that statute of frauds barred fraud claim where plaintiff produced "no writing signed by the bank or its agent promising to delay or cancel the foreclosure"). It is undisputed that there was no writing, signed by BOA, demonstrating BOA's agreement to rescind the foreclosure sale of the Property. However, "[u]nder Massachusetts law, the party against whom enforcement of the contract is sought may be estopped from raising a statute of frauds defense if that party has made a material misrepresentation that the other party relied upon." Lahlou v. Daley, 874 F. Supp. 2d 8, 10 (D. Mass. 2012); see Frederick v. Conagra, Inc., 713 F. Supp. 41, 45 (D. Mass. 1989). Estoppel applies, though, only where a plaintiff pleads both breach of contract and a claim based on fraud or deceit. Lahlou, 874 F. Supp. 2d at 11 & n. 23

and cases cited.  Estoppel allows an injured party to recover under a theory of reliance even when the statute of frauds bars enforcement of the contract itself.  Id.  "This is a logical conclusion because it balances the intent behind the statute of frauds with the principle that the wrongdoer should not be allowed to benefit from his wrong."  Id. (internal quotation marks omitted).  Here, Shaw has pled a fraud claim, but she did not allege a viable breach of contract claim.  See D. 41 at 8 (dismissing breach of contract claim).  The estoppel exception to the statute of frauds is, therefore, unavailable and the statute of frauds bars Shaw's fraud claim.

Even if Shaw could circumvent the statute of frauds, BOA is entitled to judgment as a matter of law because Shaw has not pointed to any evidence that she acted on the alleged rescission to her detriment.  Shaw's operative complaint alleges that she was misled into "not protecting" herself and that she could have "taken steps" to prevent foreclosure.  D. 67 ¶¶ 62, 65.  Shaw has not provided any evidence regarding how she would have protected herself and what steps she was prevented from taking by the alleged false representation.  Shaw asserts that she was harmed because she lost title to her home.  D. 84 at 16.  She, however, cites nothing in the record to indicate that she would have been able to avoid foreclosure had the alleged representation not occurred. For these reasons, BOA's motion for summary judgment is allowed as to the fraud count (Count III).

**D.        Count V:  Wrongful Foreclosure**

Shaw alleges several bases for her wrongful foreclosure claim.  First, she alleges that BOA violated the notice provisions of Mass. Gen. L. c. 244, § 14.  D. 67 ¶¶ 68, 69. Second, she asserts that the foreclosure was an unfair and unconscionable debt collection

that violated the FDCPA.  Id. ¶ 68.  Third, Shaw contends that BOA wrongfully failed to consider options pursuant to HAFA prior to foreclosure.  Id. ¶ 68; D. 84 at 11.  Relatedly, Shaw alleges that the foreclosure violated several HAMP provisions.  D. 67 ¶ 75; D. 84 at 13, 16.  Finally, Shaw again relies on her allegation that she was assured that the foreclosure sale was postponed and then rescinded.  D. 67 ¶ 74; D. 84 at 13.

BOA argues that it is entitled to judgment as a matter of law on the wrongful foreclosure claim because the foreclosure sale was conducted in accordance with Mass. Gen. L. c. 244.  D. 76 at 5.  The notice requirement in Section 14 of Mass. Gen. L. c. 244 required BOA to publish notice of the sale in a newspaper published in North Attleboro, the location of the Property, or in a newspaper with general circulation in North Attleboro.  Such notice had to appear once in each of three successive weeks prior to the foreclosure sale, starting at least three weeks prior to the sale.  Id.  The evidence submitted by BOA indicates that it satisfied this requirement and Shaw does not dispute that evidence.  D. 77-4, Exh. C-11; D. 84 at 21.

Section 14 of Mass. Gen. L. c. 244 also requires a mortgagee to send notice of the sale to the owner of the equity of redemption at least fourteen days prior to the date of the sale.  Although Shaw contends that she was not provided with adequate notice, the record shows that BOA sent notice to Shaw, the attorney then representing her in this lawsuit, and her bankruptcy attorney.  D. 77-4, Exh. C-10.  Shaw has not pointed to anything in the record to rebut the documentation submitted by BOA.

BOA's argument regarding wrongful foreclosure focuses on two matters surrounding the foreclosure sale.  First, Shaw received two e-mails from her then attorney stating that the bank represented that the foreclosure sale would be postponed and, later,

that the sale had been rescinded. Second, the recording of the foreclosure deed occurred nearly a year after the sale. BOA argues that neither event – the purported postponement then rescission or the late recording – is legally significant.

BOA's rationale is as follows. A foreclosure sale is complete when the buyer executes a memorandum of sale because the memorandum of sale extinguishes the mortgagor's right of redemption. BOA argues that the memorandum of sale also terminates the power of the mortgagee to rescind the sale. D. 76 at 8. The mortgage lien evaporated the moment the Memorandum of Sale was signed and title transferred to the successful bidder. Id. at 10. In other words, although Shaw alleges that her lawyer told her that BOA rescinded the sale, BOA was actually powerless to do so because its interest in the property had already transferred to Fannie Mae.

BOA is correct that the equity of redemption is extinguished by the memorandum of sale. "[I]t is uniformly held that the proper execution of a memorandum of sale terminates a mortgagor's equity of redemption." In re Chrichlow, 322 B.R. 229, 237 (D. Mass. 2004). "[W]hat is sold at a foreclosure sale is the equity of redemption and that is sold as of the execution of the memorandum of sale." Id.; see In re Dow, 250 B.R. 6, 8 (D. Mass. 2000). As has been discussed, Shaw has not proffered any admissible evidence that BOA postponed the foreclosure sale prior to its occurrence. She also does not cite to anything in the record that would indicate that her right of redemption was not terminated and that BOA rescinded the sale while it was still able to do so. BOA is, therefore, entitled to summary judgment as to Shaw's claim of wrongful foreclosure on the bases of inadequate notice and purported postponement and rescission.

Even if, however, Shaw could show that the foreclosure was rescinded, the probable consequence would be another foreclosure sale. Shaw has not demonstrated otherwise given that there is no evidence that she is in the position to resume payments on the Note. Instead, Shaw appears to depend on the possibility of a mortgage modification to change her monthly payment amount. However, that potentiality is unlikely at best given that Shaw did not avail herself of the modification offered to her in 2009 and was declined for HAMP and in-house modifications. Moreover, BOA was under no obligation to consider a modification prior to foreclosure in the event of a default. Mackenzie, 738 F.3d at 493.

As to the issue of whether the allegedly late recording of the foreclosure deed substantiates Shaw's wrongful foreclosure claim, the Court recognizes that Mass. Gen. L. c. 244 does not prescribe a required time period for recording a foreclosure deed. See D. 76 at 8-9. The absence of such provision is consistent with the principle that the foreclosure of a mortgage extinguishes it. See id. (citing Mortgage & Contract Co. v. First Mortg. Bond Co., 256 Mich. 451, 452 (1932)). The Court, therefore, allows summary judgment in favor of BOA to the extent Shaw seeks to support her claim of wrongful foreclosure on this basis.

Finally, as to Shaw's theory of wrongful foreclosure based on alleged violations of the FDCPA, the Court discussed the applicability of the FDCPA *supra*, section V.A, and allows summary judgment as to the FDCPA-related claims. As discussed *supra*, section V.B, HAMP does not provide a private right of action, and therefore BOA's summary judgment motion as to HAMP-based assertions of wrongful foreclosure is also allowed.

## VI.      Conclusion

For the aforementioned reasons, BOA's motion for summary judgment, D. 75, is

ALLOWED.

**So Ordered.**

/s/ Denise J. Casper<br>
United States District Judge